**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **Case No. 4:26-CR-00023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

## <u>UNITED STATES' MOTION TO DESIGNATE CASE AS COMPLEX UNDER SPEEDY TRIAL ACT AND TO ENTER A REVISED SCHEDULING ORDER</u>

The United States of America, by and through John G.E. Marck, Acting United States Attorney for the Southern District of Texas, Suzanne Elmilady and Anthony Franklyn, Assistant United States Attorneys for the Southern District of Texas, files this motion requesting the Court designate this case as complex under 18 U.S.C. § 3161(h)(7)(B)(ii), and to continue current motions and scheduling order, including the trial date.[1]

This case arises from a complex investigation by the U.S. Department of Health and Human Services ("HHS") and the Federal Bureau of Investigation ("FBI") charging false statements relating to health care matters. As alleged in the criminal indictment, Defendant John Stevenson Bynon, Jr. (Defendant) engaged in a complex, surreptitious and systematic scheme altering the eligibility criteria of patients awaiting organ transplants under his care, resulting in patient decline and death. This case is complex because of the nature of the prosecution—involving numerous patients and medical personnel, voluminous medical records, and substantial financial records regarding billings to Medicare. Additionally, the alleged "falsity" and "delivery of and payment for health care benefits, items, and services" in violation of 18 U.S.C. § 1035 is complex (or per Defendant, "entirely novel" (Defendant's Motion to Dismiss Indictment (Doc. 29), 2)), and

---

1 In the alternative, the United States asks the Court to toll the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(B)(iv), to allow for effective preparation by the parties based on the issues raised in this motion and Defendant's pretrial motions, filed on May 4, 2026.

will require expert testimony and additional discovery of medical records to fully and adequately address the anticipated defense(s) raised by Defendant in his Motion to Dismiss and for the United States to adequately prosecute this case. The case complexity includes more than 20 trial witnesses, including several medical experts, and voluminous discovery because of the multiple electronic databases searched, extensive financial records, and additional medical records the United States has already received and/or anticipates receiving to rebut Defendant's anticipated trial defense(s).

## I.    FACTUAL BACKGROUND

From 2011 until 2024, Defendant was the Director of Abdominal Organ Transplantation and the Surgical Director for Liver Transplantation of Memorial Herman Health System (MHHS) at the Texas Medical Center (TMC) in Houston, Texas. Defendant also served as the primary surgeon for the liver program at MHHS TMC for their membership to the Organ Procurement and Transplantation Network (OPTN). The OPTN, established by the National Organ Transplant Act in 1984, is tasked with maintaining a national registry for organ matching. The network is operated by a private organization, the United Network of Organ Sharing (UNOS), under a federal contract. Funding for the OPTN contractor is partially derived from federal grants from the Health Resources and Services Administration (HRSA).

UNOS is responsible for managing the national transplant waiting list, matching potential transplant donors and recipients, maintaining the database that contains all organ transplant data for every transplant that occurs in the United States, ensuring that patients receive a fair chance (without regard for age, sex, ethnicity, religion, financial/social status, etc.) of organ receipt, monitoring organ matches to ensure that organ allocation policies are followed, and public education and outreach regarding organ donation and transplantation. UNOS provides technology,

2

known as UNet, to assist matching organ donors and patients in need of organs.

UNet maintains a list of patients in need of organ transplants, a list of organ donors, and other technologies which aid in the process of facilitating compatible matches and deliveries between donors and recipients. Through UNet, a patient in need of an organ transplant has medical data, including factors related to the patient's immunological system, entered into their medical record as part of the matching criteria to receive an organ. UNet maintains various parameters, including physical parameters (e.g., size and weight) of the potential donor for the organ match to the potential recipient. These parameters contribute to the ability of the transplant recipient to be matched with a compatible donor and increase the likelihood of a successful transplant. For a liver transplant, a severity score based on the Model for End-Stage Liver Disease, or MELD score, is used to designate the severity of the need for a liver transplant. The MELD score, ranging from 6 (less ill) to 40 (gravely ill), is used for transplant candidates aged 12 and older. A Pediatric End-Stage Liver Disease (or PELD) score is used for transplant candidates younger than 12.

Medicare is a federal health care program that provides medical benefits to persons disabled or aged 65 or older. The U.S. Department of Health and Human Services administers Medicare. Medicare coverage for organ transplants is provided under Part A and Part B services. Medicare Part A covers necessary tests, labs, and exams, and services for organ transplants, immunosuppressive (transplant) drugs, follow-up care, and procurement of organs. Medicare Part B covers physician services associated with organ transplants.

Prior to the shutdown of the MHHS TMC liver transplant program in 2024, potential organ recipients at MHHS TMC were reviewed by a Medical Review Board (MRB), an interdisciplinary team of doctors and medical personnel responsible for reviewing and assessing the eligibility and

3

viability of a patient for possible organ transplantation. The MRB would collectively decide whether the patient was listed on the organ transplantation waitlist, and the appropriate donor criteria for the patient.

On or about March 20, 2024, the Membership Professional Standards Committee (MPSC), the oversight body of the OPTN, was notified by an anonymous report regarding multiple instances of UNOS waitlist record manipulations by Defendant. Specifically, the report alleged that the record manipulations, made unilaterally by Defendant and without consultation or notice to the patient or patient's MRB, involved the medically inexplicable alteration of donor criteria necessary for the patient. These alterations effectively inactivated the candidate on the organ transplant waitlist, circumventing the act of formally inactivating the candidate, which would have resulted in notice to the waitlist candidate and/or MRB that the candidate was inactive. During the effective inactivation period, the candidate was excluded from organ listings due to the altered donor criteria by Defendant.

On or about March 22, 2024, OPTN notified MHHS TMC that the MPSC reviewed data on changes made to acceptance criteria for multiple liver patients within the MHHS TMC liver transplant program and determined that it presented a serious concern for patient equity and safety. On or about April 3, 2024, OPTN formally requested that the liver transplant program be voluntarily inactivated to mitigate an urgent and severe risk to patient health.

## II.     PROCEDURAL HISTORY

On January 24, 2026, the United States obtained a criminal indictment in the Southern District of Texas against Defendant, charging him with five counts of False Statements Relating to Health Care Matters, related to five named patients/victims in which Defendant manipulated the

donor matching criteria rendering the patient functionally inactive on the organ transplant waitlist. Defendant made his initial appearance and was arraigned on February 5, 2026. Defendant filed an unopposed continuance motion on March 9, 2026 (Doc. 25), and the Court entered the following scheduling order: Motions due by 4/27/2026; Responses due by 5/11/2026; Replies due by 5/18/2026; Hearing set for 6/1/2026; Pretrial conference set for 6/15/20226, and Jury trial set for 6/22/2026. On April 24, 2026, Defendant filed an unopposed motion to amend the scheduling order (Doc. 27), pushing the motions deadline by seven days to 5/4/2026; the response deadline by four days to 5/15/2026; and the reply deadline by one day to 5/19/2026. On May 4, 2026, at 9:27pm, 11:02pm, and 11:28pm, Defendant filed a 19-page Motion to Dismiss (Doc. 29), an 18-page (excluding exhibits) Motion to Suppress Evidentiary Fruits of Search Warrant (Doc. 30), and a 5-page Motion to Strike Specific Allegations in the Indictment (Doc. 33), respectively.

### III.    APPLICABLE LAW

Under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., a defendant's trial must generally commence within seventy days.  18 U.S.C. § 3161(c)(1).  The Speedy Trial Act, however, excludes certain periods of time from this computation.   First, the Court may toll the seventy-day period by granting a "continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  In determining whether to grant a continuance, a factor the Court must consider is "*whether the case is so unusual or complex*, due to the number of defendants, the nature of the prosecution, or *the existence of novel questions of fact or law*, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself" within the prescribed time limit. 18 U.S.C. § 3161(h)(7)(B)(ii) (emphasis added).  In addition to the nature of the case and the

5

number of defendants, courts have also considered the volume of discovery and investigative materials in designating cases as complex. *See e.g.*, *United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008) (noting that the district court had designated a criminal child support case as complex due to voluminous documents, sealed documents, and the logistical complications caused by Hurricane Katrina).

Further, as the Fifth Circuit has recognized, a designation based on the volume of discovery and complexity of the case is consistent with cases interpreting the Act. See e.g., *United States v. Bieganowski*, 313 F.3d 264, 282 & n. 15 (5th Cir. 2002) (upholding a continuance based on an "ends of justice" analysis after the district court designated the case complex based on the high volume of discovery) (citing *United States v. Wellington*, 754 F.2d 1457, 1467 (9th Cir.1985) (upholding the complexity of a mail fraud prosecution as a proper ground for the granting of a continuance)); see also *United States v. Chalkias*, 971 F.2d 1206, 1211 (6th Cir.1992) (upholding the grant of a continuance based on the complexity of an interstate cocaine conspiracy); *United States v. Eversole*, 783 F. Supp. 2d 972, 975 n. 5 (S.D. Tex. 2011) (granting an "ends of justice" continuance, based in part, on the amount of discovery and the nature of the prosecution).

### A.  Time Should be Excluded Under the Speedy Trial Act Because of the Complexity of this Case

This case involves a complex healthcare fraud in which Defendant (now) seeks to masquerade his clandestine manipulation of patient donor criteria as "bona fide medical judgment." Defendant's Motion to Dismiss Indictment (Doc. 29), 17. This matter is complex not only because of its topical nature and how Defendant committed the alleged falsity, but also because of the volume of evidence and the number of witnesses involved in the case.

The United States understands why Defendant, who "has performed over 2,000 transplant surgeries…in a renowned 40-year career," and his attorneys with a combined 50+ years of legal experience, would view this prosecution as "entirely novel." This case does not involve a simple falsity issue in which a medical provider misrepresented meeting with a patient when she did not or claimed to have performed a medical procedure that he did not perform. The underlying falsity in the alleged violations is that Defendant unilaterally and surreptitiously mispresented the donor criteria for the named patients, resulting in the patient's effective ineligibility to receive a needed organ transplant during the periods of the criteria alteration.

The records and documents in this case are held by two large healthcare corporations which have maintained their own legal privileges and interests related to the records, witnesses, and Defendant as it relates to this case. This has been a massive undertaking for the Government to coordinate document retrieval and witness testimony in this case by coordinating with MHHS and UT Health Medical System to ensure all parties are following discovery obligations and applicable medical confidentiality requirements.

During its investigation, the United States focused its prosecution on the approximate one-year period (February 2023-March 2024) and five victims identified in the indictment. Indictment (Doc. 1), 8. The investigation resulted in the completion of over 46 interviews of individuals that either worked with Defendant, reviewed Defendant's work, and/or were (relatives of) victims of Defendant's conduct. The discovery production has included over 205,000 _documents_ and a cell phone dump of Defendant's phone, totaling approximately 1.21 TB of data.

Defendant's filed motion to dismiss has now raised additional issues that the United States will need to investigate to rebut Defendant's anticipated arguments at trial, another factor for the

Court's consideration under the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(iv) ("The factors…which a judge shall consider in determining whether to grant a continuance [includes]…[w]hether the failure to grant such a continuance…would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.") In his motion, Defendant asserts that his actions were based, in part, on the victims' "worsened medical conditions" and "express guidance provided by UNOS during the COVID-19 pandemic." Defendant's Motion to Dismiss the Indictment (Doc. 29), 5. Defendant asserts that his conduct was an "internal hold," the result of "medical judgment" stemming from the patient's "medical suitability for transplant at the time." (Id. at 12). As such, it is now relevant to this matter facts beyond the scope of what the United States alleged in its indictment, including but not limited to whether Defendant engaged in the alleged clandestine and unilateral criteria manipulation prior to the issuance of the UNOS COVID-19 guidance, the medical condition of the patient(s) at the time of Defendant's criteria manipulation, and/or MHHS TMC policies regarding an "internal hold" in lieu of rendering a patient inactive on the waitlist.

Despite Defendant's 40-year career, the United States anticipates limiting its (rebuttal) investigation to Defendant's period working at MHHS TMC, which ran from 2011-24. Additionally, given Defendant's reliance on the above arguments regarding medical judgment to justify his conduct, the United States anticipates having to now retain medical experts for evaluation and testimony regarding the reasonableness and/or necessity of Defendant's conduct. It is essential that the medical experts be afforded sufficient time not only to review the medical records, which exceed 48,000 documents, but also to prepare their expert review and opinion.

Liver transplant patients' medical files are substantially more complex than those involving routine surgical procedures. The records typically contain detailed historical medical information, multiple diagnoses, surgical reports, specialized testing, immunosuppression regimens, and extensive follow-up care documentation. The extraordinary volume of materials presents significant challenges, particularly given the structure of the electronic medical record system. These challenges include the need to sift through extensive medical technician notes, laboratory data, encounter summaries, and vital-sign records, all while the medical expert continues to maintain an active medical practice of their own. The resulting expert report must be generated and produced to the Defendant, allowing the Defendant adequate time to review the findings and, if necessary, retain their own experts to address these factual issues at trial.

Given the volume of discovery to date, the number of (anticipated) witnesses, the serious nature of the charges, and the need for additional medical record discovery and expert testimony regarding the reasonableness and necessity of Defendant's purported medical judgment, and so that justice can be done, the United States respectfully submits that this case should be designated as complex, as adequate preparation and presentation for trial would be unreasonable within the 70 days prescribed by the Act (or the 48 days between the filing of Defendant's motion to dismiss and the current trial date).

### B.  Time is Presently Tolled Under the Speedy Trial Act

The Speedy Trial clock is presently tolled in this matter due to previous continuance motions and Defendant's recently filed pretrial motions. The commencement of the 70 days begins after a defendant enters a plea of not guilty. 18 U.S.C. § 3161(c)(1). However, Sections 3161(h)(1)(C) and 3161(h)(7)(A) excludes from the 70-day window any "delay resulting from any

9

pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" and "any period of delay resulting from a continuance granted by any judge…at the request of the defendant or his counsel…if the judge granted such continuance on the basis of [her] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," respectively. 18 U.S.C. § 3161(h)(1)(C); 18 U.S.C. § 3161(h)(7)(A). The excludability of a pretrial motion delay has been described as automatic.  *See  United States v. Tinklenberg*, 563 U.S. 647, 655, 659 (2011) (holding that pretrial motion delay does not contain a causation requirement). That is, a pretrial motion generates excludable delay regardless of whether it causes, or is expected to cause, delay in starting a trial. *Id.* at 650.

Defendant was arraigned and entered a plea of "not guilty" on February 5, 2026. Defendant was subsequently released on bond on February 6, 2026. On March 9, 2026, Defendant filed an unopposed continuance motion, pursuant to 18 U.S.C. § 3161(h)(7)(A) & (B)(iv). Defendant's Unopposed Motion to Continue (Doc. 25), 5. The Court granted the continuance motion on March 11, 2026. (Doc. 26). On May 4, 2026, Defendant filed three lengthy pretrial motions, including Defendant's Motion to Dismiss the Indictment (Doc. 29) and Defendant's Motion to Suppress Evidentiary Fruits of Search Warrant (Doc. 30). The Speedy Trial Act is presently tolled until the disposition of the pending pretrial matters.

### C. The 2026 FIFA World Cup is Presenting Logistical and Financial Challenges Under the Current Scheduling Order

As the Fifth Circuit addressed in *Edelkind* (525 F.3d 388, 397) and *Bieganowski* (313 F.3d 264, 282), the Court can also consider logistical constraints in its complexity analysis and

excusable delay under the Speedy Trial Act. This matter is presently set for trial on June 22, 2026. In addition to the necessary investigation of the defense issues and retaining (additional) experts for this matter, the parties also must contend with the logistics of the City of Houston as a host location for the 2026 FIFA World Cup. The World Cup matches and fan events are scheduled to run from June 11-July 19, 2026. Due to the influx of anticipated visitors and national/international travelers to and within the United States, the FBI is establishing command posts staffed by local agents in major cities across the country, including Houston. The Houston FBI command post will be heavily staffed by agents working multiple shifts, creating scheduling difficulties to maintain and prepare agents for trial. Additionally, because of the World Cup matches and Houston being a host city for the FIFA matches, accommodations in and flights to the Houston area are limited and/or have surged in price, which are currently more than the government approved per diem for trial.

The parties have anticipated 10 days for trial. Assuming a June 22 start date, the trial is currently expected to last until July 3.  Maintaining the current anticipated trial schedule would not only require the parties to address the additional discovery and expert issues raised by Defendant's motion to dismiss in less than six weeks but would also require the near impossible task of parties to secure flights and accommodations for witnesses during the month-long duration of the 2026 FIFA World Cup.

### IV.    CONCLUSION

The United States respectfully requests the Court certify this case as complex, tolling the time limits under the Speedy Trial Act, continue all deadlines, and issue a revised Scheduling Control Order considering the matters stated herein. Based on previous conferences between the

parties, Defense counsel Brent Newton is unavailable during the fall school semester (August-December) due to out-of-state teaching obligations. The United States would propose a new trial date in January 2027 (still less than one year after Defendant's initial appearance and arraignment), or whenever the Court deems appropriate.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

/s/ *Anthony Franklyn*
Anthony Franklyn
Sherin Daniel
Suzanne Elmilady
Amanda Alum
Assistant U.S. Attorneys

## CERTIFICATE OF CONFERENCE

I certify that on May 6, 2026, counsel for the United States conferred with counsel for Defendant and Defendant opposes this motion.

/s/ *Anthony Franklyn*
Anthony Franklyn
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Designate Case as Complex was filed with the Clerk of the Court using the ECF/CM system for filing and was emailed to all counsel of record.

/s/ *Anthony Franklyn*
Anthony Franklyn
Assistant United States Attorney

12