**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **Case No. 4:26-CR-00023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**UNITED STATES' REPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND REPLY IN SUPPORT OF COMPLEX CASE DESIGNATION**

The United States of America, through its undersigned counsel, respectfully files this response in opposition to Defendant John Stevenson Bynon, Jr. (hereinafter, "Defendant")'s motion to dismiss the indictment. (Docket No. 29.)  For the reasons that follow, the motion should be denied.

## I.  FACTUAL BACKGROUND

Defendant served as the Director of Abdominal Organ Transplantation and Surgical Director for Liver Transplantation of Memorial Herman Health System at the Texas Medical Center in Houston, Texas from 2011 to 2024.  Patients placed on the waitlist for organ donations deferred to Defendant's expertise and judgment, entrusting their lives to this ostensibly renowned surgeon.  Defendant repeatedly betrayed their trust, falsifying donor criteria for at least five patients.  By doing so, Defendant rendered these patients functionally ineligible for organ transplantation. (Docket No. 1.)  Indeed, Defendant concedes that he "adjusted donor acceptance criteria using UNet for the express purpose of having a donated liver *not* match the criteria for

each of the five patients." (Docket No. 29 at p. 4) (emphasis added).[1]  As explained by Defendant, "he set the donor age and weight criteria (*e.g.*, at the weight and age of a small child) so as to preclude organ offers for an adult transplant patient." *Id*.  Essentially, the false statements made by Defendant denied patients life-saving procedures without their knowledge or consent.  These patients continued to receive medical care as though they were eligible to receive an organ donation despite Defendant ensuring that, in fact, they were not.

On January 14, 2026, a grand jury returned an indictment charging Defendant with five counts of making a false statement relating to health care matters in violation of 18 U.S.C. § 1035. (Docket No. 1.)  Defendant subsequently entered a plea of not guilty.  (Docket No. 8.)  On May 4, 2026, Defendant moved to dismiss the indictment for failure to state an offense.  (Docket No. 29) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)).[2]

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c) provides that an indictment shall contain "a plain, concise and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."  Fed. R. Crim. P. 7(c).   An indictment is sufficient if it "(1) enumerate[s] each prima facie element of the charged offense; (2) fairly

---

[1] United Network of Organ Sharing ("UNOS") is responsible for managing the national transplant waiting list, matching potential transplant donors and recipients, maintaining the database that contains all organ transplant data for every transplant that occurs in the United States, ensuring that patients receive a fair chance (without regard for age, sex, ethnicity, religion, financial/social status, etc.) of organ receipt, monitoring organ matches to ensure that organ allocation policies are followed, and public education and outreach regarding organ donation and transplantation. UNOS provides technology, known as UNet, to assist matching organ donors and patients in need of organs.

[2] Defendant attempts to justify his false statements by citing inapplicable guidance from UNOS: However, he acknowledges that "his motives for such adjustments [to the donor criteria] is not relevant to his legal challenges to the indictment." *Id*.

inform[s] the defendant of the charges filed against him; and (3) provide[s] the defendant with a double jeopardy defense against future prosecutions." *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (citation omitted).  An indictment need not specify "the evidentiary details by which the government plans to establish [the defendant's] guilt." *United States v. Lightner*, Case No. 18-513, 2018 U.S. LEXIS 211527, at *5 (S.D. Tex. Dec. 17, 2019) (J., Rosenthal) (citing *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986)); *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978) ("It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges.").  Courts "[are] required to take the allegations in the indictment as true to determine whether an offense has been stated." *United States v. Moss*, 872 F.3d 304, 308 (5th Cir. 2017) (quoting *United States v. Crow,* 164 F.3d 229, 234 (5th Cir. 1999)).

To sustain a conviction on the § 1035 counts, the United States must prove that "(1) the defendant made a materially false, fictitious, or fraudulent statement or misrepresentation; (2) in connection with the delivery of [or payment for] health care benefits; and (3) [he] did so knowingly and willfully." *United States v. Hamilton*, 37 F.4th 246, 260 (5th Cir. 2022) (citing *United States v. Dailey*, 868 F.3d 322, 330 (5th Cir. 2017)).  The intent to defraud "may be inferred from the totality of the circumstances, and need not be proven by direct evidence." *United States v. McLean*, 715 F.3d 129, 140 (4th Cir. 2013) (affirming a § 1035 conviction, in part, because patient and expert testimony established that the defendant's "misrepresentations were intentional and that he was not simply a negligent physician").  "As long as the statutory language of the charged offense unambiguously sets out all the necessary elements, an indictment setting forth the offense in the words of the statute itself is generally sufficient." *United States v. Hagmann*, 950 F.2d 175, 183

3

(5th Cir. 1991); *see, e.g.*, *United States v. Alexander*, 170 F.4th 1303, 1311 (11th Cir. 2026) (affirming the district court's denial of the defendant's motion to dismiss because "Count 19 of the indictment directly track[ed] the language of § 1035(a)(1)").

## III.   DISCUSSION

Defendant sets forth three arguments in support of his motion to dismiss.  (Docket No 29.) First, he avers that donor criteria are tantamount to "an exercise of medical judgment, which he claims cannot be false "as a matter of law." *Id*. at p. 12.   Second, Defendant contends that the indictment fails to allege that he "made any statement, representation, document, writing, or entry in a matter involving a health care benefit program, or in connection with the delivery of or payment for health care benefits, items, or services." *Id.* at p. 13 (citing 18 U.S.C. § 1035) (quotation omitted).  Finally, Defendant argues that he "could not have reasonably foreseen that § 1035(a)(2) criminalized his conduct." *Id*. at p. 16.  These arguments are unavailing and should fail to persuade the Court to grant the relief Defendant requests.

### A.  The Veracity of Defendant's "Medical Judgment" is a Question of Fact for the Jury to Resolve at Trial

It has long been settled that "[t]here is no such thing as a motion for summary judgment in a criminal case." *Russell v. United States*, 369 U.S. 749, 791 (1962).  Consequently, the Court's task is not to decide whether there is a disputed issue of material fact warranting a trial on the merits, but on whether the indictment satisfies the requirements of Federal Rule of Criminal Procedure 7.

Citing *Williams v. United States*, 458 U.S. 279 (1982), Defendant maintains that "donor acceptance criteria are not 'facts' capable of being objectively 'true' or 'false.'" *Id.* at p. 10.

Rather, he claims that "donor acceptance criteria" does not amount to a "statement' or 'representation," because it is "neither intended, nor offered, to convey a 'fact' as 'true' when it [is] actually 'false.'" *Id*. at p. 11.

Defendant's reliance on *Williams* is misplaced. The defendant in that case "deposited several checks that were not supported by sufficient funds," resulting in his conviction for making false statements to a bank in violation of 18 U.S.C. § 1014. 458 U.S. at 283. The Supreme Court vacated his conviction, holding that "a check is not a factual assertion at all, and therefore cannot be characterized as 'true or 'false.'" *Id*. at 284-85. Thus, the act of depositing a check is not a "representation as to the state of the [defendant's] bank balance." *Id*. It simply "[directs] the drawee banks to pay the face amounts to the bearer, while [committing the defendant] to make good the obligations if the banks dishonored the drafts." *Id*.; *see also Thompson v. United States*, 604 U.S. 408, 416 (2025) (noting that "a conviction under § 1014 requires at least two things: (1) the defendant made a statement, and (2) that statement can be characterized as 'false' and not 'true.'"); *United States v. Medeles*, 916 F.2d 195, 202 (5th Cir. 1990) (vacating a conviction for obtaining money from a bank by false representations in violation of 18 U.S.C. § 1344 because "the depositing of a series of known insufficient funds checks does not alone constitute false or fraudulent pretenses, or representations") (citation and quotation omitted).

Defendant's effort to compare the entry of donor criteria with the deposit of a check for insufficient funds draws a false equivalence. Unlike the checks at issue in *Williams*, the donor criteria established by Defendant contain factual assertions. As alleged in the indictment, these assertions specified that only organs for a "small child" were suitable for transplantation. (Docket No. 29 at p. 4.) Defendant does not cite, and the Government is not aware of, precedent from the

5

Fifth Circuit or sister jurisdictions in which a court dismissed a § 1035 prosecution pursuant to the rationale set forth in *Williams*.    On the contrary, the Fifth Circuit Court of Appeals has narrowly construed this decision: It has refused to extend its false-statement analysis beyond the fraudulent-check context.  *See United States v. Miller*, Case No. 08-40481, 305 Fed. Appx. 184, 186 (5th Cir. 2008) (distinguishing *Williams* in an 18 U.S.C. § 1001 prosecution, holding that the defendants' "claims of ownership of Block 51 were factual assertions that could be proven true or false, and, therefore, were statements"); *United States v. Shah*, 44 F.3d 285, 291-94 (5th Cir. 1995) (noting that "*Williams* must be considered in context; the Court was obviously troubled by the government's characterization of a check's meaning," rejecting the defendant's "contention that a 'promise to perform' cannot, as a matter of law, ever violate section 1001"); *United States v. Faulkner*, 17 F.3d 745, 770 (5th Cir. 1994) ("We find *Williams* distinguishable.  An appraisal, unlike a check, contains statements as to the fair market value of property").

Defendant posits that "medical judgment" cannot constitute a false statement.  (Docket No. 29 at p. 12.)  This contention represents a myopic interpretation of the law.  Whether the statements at issue in this case could constitute a false statement is a factual question for the jury to decide. The Sixth Circuit Court of Appeals' decision in *United States v. Paulus*, 894 F.3d 267 (6th Cir. 2018), is illustrative.  A cardiologist "exaggerated the extent of blockages" in his patients' arteries, resulting in a succession of unnecessary procedures. *Id*. at 270.  A grand jury charged the cardiologist with, *inter alia*, making false statements in violation of § 1035.  *Id*.  At trial, expert testimony from nine doctors demonstrated that the cardiologist "systematically exaggerated the amount of blockage he saw on [his patients'] angiograms." *Id*. at 274.  After the jury found the cardiologist guilty, the district court set aside the verdict based on the Government's purported

failure to prove a false statement. *Id.* The district court reasoned that artery blockage "is a subjective medical opinion, incapable of confirmation or contradiction." *Id*. at 275. Consequently, the cardiologist's interpretations of angiograms "could not be 'subject to proof or disproof.'" *Id.*

The Sixth Circuit Court of Appeals vacated the judgment of acquittal, reinstating the cardiologist's guilty verdict. *Id*. at 280. The *Paulus* court distinguished "mere mistaken judgments or good-faith efforts to treat patients" from "[lies] about what [the cardiologist] saw on the angiograms with the intent to deceive the government." *Id*. at 277. Only the latter is subject to criminal liability pursuant to § 1035. *Id*. The Government in *Paulus* "carried its burden" of proof at trial because "a reasonable jury could be left with the impression that the problems in this case came from a lengthy pattern of fraudulent over-diagnosing by [the cardiologist]." *Id.* at 278. "[Opinions] are not, and have never been, completely insulated from scrutiny." *Id*. at 275. Accordingly, medical opinions qualify as statements within the meaning of § 1035 because they are capable of verification. *See United States v. Patel,* 485 Fed. Appx. 702, 709 (5th Cir. 2012) (affirming the healthcare fraud conviction of a cardiologist in part because "on every count at least one expert averred that in his medical opinion the procedure had been medically unnecessary . . . they characterized [the cardiologist's] blockage estimates as 'false statements.'"); *United States ex rel. Drudging v. Drudging*, 952 F.3d 89, 98 (3d Cir. 2020) ("[Medical] opinions may be 'false' and an expert's testimony challenging a physician's medical opinion can be appropriate evidence for the jury to consider on the question of falsity.").

The donor criteria prescribed by Defendant are more akin to the medical opinion at issue in *Paulus* than the fraudulent checks in *Williams*. Medical judgments are not immune from prosecution merely because they may be subjective; indeed, a jury could very well find that a

subjective medical judgment is false and misleading.  *See Paulus*, 894 F.3d 267.  Adopting the Sixth Circuit Court of Appeals' rationale in *Paulus* should compel the Court to allow the jury to determine whether Defendant's medical judgment constitutes a false statement.

Defendant cites *United States v. AseraCare Inc.*, 176 F. Supp, 3d 1282, 1285-86 (N.D. Ala. 2016), to argue that "a difference of opinion in medical judgment between physicians and medical experts about which reasonable minds could differ . . . cannot prove the falsity element as a matter of law."  (Docket No. 29 at p. 12.)  *AseraCare Inc*. is inapposite, however, because this case concerned the disposition of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  *Id*. at 1286.  The only evidence proffered by the Government in support of *civil liability* under the False Claim Act were medical records and "the testimony of Dr. Liao, who offered his opinion, based on his clinical judgment after a review of those medical records, about the hospice eligibility of those patients."  *Id.* at 1285-86.  The sole issue before the Court at this juncture is whether the indictment comports with the pleading requirements set forth in Federal Rule of Criminal Procedure 7.  Dismissal of the indictment based on insufficient evidence would usurp the fact-finding function of the jury.

### B. The Indictment Sufficiently Alleges Defendant Made a False Statement in Connection with the Delivery and Payment of a Health Care Benefit Program

Defendant's argument regarding the health care benefit program is convoluted and meritless.  As a preliminary matter, the Government must prove that Defendant made false statements "in connection with delivery of or payment for health care benefits." *Dailey*, 868 F.3d at 380.  The indictment alleges that every patient "was a Medicare beneficiary" during the relevant

8

timeframe. (Docket No. 1 at pp. 4-7.)[3] It also avers that Defendant's patients "received health care benefits, items, and services as if [they] were eligible to receive donor organ offers." *Id*. Counts one through five track the statutory language, providing that Defendant made false statements "in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare." *Id*. at p. 8; *see United States v. Calhoon*, Case No. 00-21147, 2001 U.S. App. LEXIS 31201, *2 (5th Cir. Oct. 29, 2001) ("Because the indictment here tracks the language of the statute, alleging all the elements of the crime, gives notice of the charges, and permits the defendant to raise double jeopardy, the district court did not err in denying [the defendant's] motion to dismiss the indictment."); *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991) (It is generally sufficient "when the charge tracks the governing statute as long as the statutory language unambiguously sets forth all essential elements.") (internal citations omitted). In fact, Defendant concedes that "Medicare qualifies as a 'health care program' under 18 U.S.C. §§ 24(b)(20) & 1035, and he does not dispute that his patients' medical expenses were paid for by Medicare." (Docket No. 29 at p. 13.)

Defendant's argument in support of dismissal is inconsistent with a cursory review of the indictment. For example, Defendant asserts that "the body of the indictment does not allege that Dr. Bynon made a false, fictious, or fraudulent statement, representation, document, writing, or entry with respect to Medicare." (Docket No. 29 at p. 14.) Page 8 of the indictment belies this assertion. Because the indictment sufficiently alleges that Defendant made false statements in

---

[3] Defendant does not dispute this fact. *See* Docket No. 29 at p. 4 ("All five patients included in the indictment were under the care of Dr. Bynon, and they were covered by Medicare during the relevant time periods.").

connection with a health care program, dismissal is unwarranted

### C. This Prosecution Does Not Offend the Due Process Clause

"[No] man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bouie v. City of Columbia*, 378 U.S. 247, 351 (1964). Defendant claims that he "could not have reasonably foreseen that § 1035(a)(2) criminalized his conduct." (Docket No. 29 at p. 16.) According to Defendant, the Government's use of Section 1035 to prosecute him offends due process. *Id*. at p.15. "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the case at hand." *United States v. Branson*, 139 F.4th 475, 477 (5th Cir. 2025) (quoting *Vill. of Hoffman Ests. V. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982)). Defendant shoulders the burden of demonstrating that § 1035 "is vague *in his case*." *Id.* (quoting *United States v. Clark*, 582 F.3d 607, 614 (5th Cir. 2009) (emphasis in original). Only Defendant's *ipse dixit* assertions provide any suggestion that the indictments allegations are unconstitutionally vague. Such conclusory assertions do not warrant dismissal.

### IV. A Complex Case Designation is Warranted Because Defendant Raised Previously Undisclosed Arguments in His Motion to Dismiss, Requiring a More Comprehensive Investigation to Rebut his Defense

The parties convened at defense counsel's office on January 29, 2026, and the defense attorneys presented a PowerPoint presentation. The purpose of this meeting was not to divulge trial strategy, provide expert notice, discuss discovery, or preview legal arguments. In fact, it was a collegiate meeting, requested by the defense, for a pre-unsealing/pretrial resolution and urging the government not to pursue their criminal case. Defendant's presentation emphasized his professional success and set forth patient testimonials. Defense counsel referred generally to

10

alleged "internal holds" and Covid-19 guidance from UNOS, but not in relation to the specific victims in this case. In fact, Defendant requested the Government to reveal the identity of the victims. Defendant denied the Government's request for a copy of the presentation. Instead, he sent letters of support and a newspaper article regarding a kidney transplant. The case was unsealed, and Defendant made his initial appearance two weeks after this meeting. (Docket No. 1.)

The motion to dismiss avers that Defendant "exercised medical judgment in adjusting donor acceptance criteria to screen out unwanted organ offers based on a recipient's medical suitability for transplant at the time. Such an exercise of medical judgment cannot – as a matter of law – be a false, fictitious, or fraudulent statement of fact." (Docket No. 29 at p. 12.) The Government had no reason to infer that Defendant would assert this defense as to every victim at the January 29, 2026 meeting because the victims were unknown to Defendant at this time. Defendant's medical-judgment defense requires the United States to refute this claim as to every victim, proffering evidence that medical judgment is mere pretext for violating § 1035. Accordingly, a complex case designation is warranted to afford the parties ample opportunity to review voluminous patient records and highly technical medical regulations.

[INTENTIONALLY LEFT BLANK]

11

## V.    CONCLUSION

The Government respectfully requests the Court deny the Defendant's motion to dismiss the indictment.  (Docket No. 29.)  Furthermore, the Government moves for the Court to designate this criminal action as a complex case.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

**/s/ *Amanda Alum***
Amanda Alum
Anthony Franklyn
Sherin Daniel
Suzanne Elmilady
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response in Opposition to Defendant's Motion to Dismiss and Reply in Support to Designate Case as Complex was filed with the Clerk of the Court using the ECF/CM system for filing and was emailed to all counsel of record.

*/s/ Amanda Alum*
Amanda Alum
Assistant United States Attorney