**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIM. NO. H-26-023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DR. RAYMOND LYNCH**

Defendant John Stevenson Bynon, Jr. ("Bynon") moves to exclude the testimony of Dr. Raymond Lynch ("Lynch"). (Docket No. 99.) The United States provided notice of Dr. Lynch's testimony in anticipation of Bynon raising the same legal defense(s) at trial as what was previously conveyed to the Court during oral and written arguments. However, based on the expert reports provided by Bynon on August 4, 2026, the United States no longer anticipates needing to call Dr. Lynch as an expert witness during its case-in-chief. It may, however, elicit expert testimony from Dr. Lynch as a rebuttal witness. For this and the reasons set forth below, the Court should deny the motion to exclude Dr. Lynch's testimony.

## I. Background

The Medical Review Board ("MRB") at Memorial Hermann Health System ("MHHS") approved five patients for liver transplantation.[1] Transplant coordinators then placed these patients on the national organ waitlist, entering their biographical information on a computer program where this waitlist is maintained. Bynon subsequently falsified the patients' donor criteria, a unilateral decision made without consulting or informing patients and members of the transplant team. Bynon concedes that "he set the donor age and weight criteria (*e.g.*, at the weight and age

[1] This board consisted of hematologists, surgeons (at times, including Bynon), nurses, transplant coordinators, social workers, dietitians, and other health care professionals all working at the MHHS Transplant Program

of a small child) so as to preclude organ offers for an adult transplant patient." (Docket No. 29 at p. 4.) For instance, Bynon stated that patient A.P. could only receive a liver donation from a person with the following profile: age, 0 – 8 years old; weight, 70 lbs. – 300 lbs. This statement is false. A.P. was eligible to receive offers from adult donors, just as the MRB had determined the previous day.

On January 14, 2026, a grand jury returned an indictment charging Bynon with five counts of making a false statement relating to health care matters in violation of 18 U.S.C. § 1035. (Docket No. 1.) To sustain a conviction on the § 1035 counts, the United States must prove that "(1) the defendant made a materially false, fictitious, or fraudulent statement or misrepresentation; (2) in connection with the delivery of [or payment for] health care benefits; and (3) [he] did so knowingly and willfully." *United States v. Hamilton*, 37 F.4th 246, 260 (5th Cir. 2022) (citing *United States v. Dailey*, 868 F.3d 322, 330 (5th Cir. 2017)). Bynon subsequently entered a plea of not guilty. (Docket No. 8.) Trial is set to commence on August 24, 2026. (Docket No. 73.)

The United States filed a notice of intent to present expert testimony on July 2, 2026. (Docket No. 89.) Three expert witnesses are named in this notice: (1) Dr. Matthew Cooper, (2) Dr. Raymond Lynch, and (3) Shauna Schwarm. *Id*. Bynon moved to exclude expert testimony from Dr. Lynch on July 17, 2026. (Docket No. 99.) On August 5, 2026, at 11:43 PM, Bynon informed the United States that he intends to call Dr. Jesse Schold and Dr. Sophoclis Alexopoulosas as expert witnesses at trial. *See* Ex. A. A *Daubert* hearing is scheduled for August 17, 2026. (Docket No. 113.)

Eight categories of information are set forth in the United States' expert notice. Bynon excluded the first three categories from his *Daubert* motion:

> (1) [An] overview of HRSA, [the Organ and Transplantation Network, ("OPTN")], and oversight of transplantation to improve health outcomes through access to quality services, skilled health workforce, and innovative high-value programs. The OPTN's responsibility of maintaining the national transplant waiting list and developing policies around the placement of patients on the waitlist and creating policies and procedures for the matching of donated organs to waitlisted candidates.
>
> (2) Liver transplantation as the definitive treatment for end stage liver disease ("ESLD"), of the point at which liver dysfunction is irreversible and can only be corrected by the replacement of the damaged organ; [and]
>
> (3) Evaluation for placement on the liver transplant waitlist after signs or symptoms of ESLD, listing practices and thresholds including considerations such as the presence of ESLD (need for transplant), cardiopulmonary fitness and surgical considerations (ability to undergo and withstand the procedure), survival potential and expected capacity to adhere to post-transplant regimen.

(Docket No. 99 at pp. 1-2.)

He seeks to exclude the following five categories of information, listed in the sequence set forth in the United States' notice of expert testimony:

> (4) OPTN Membership and Professional Standards Committee's ("MPSC") review of concerns at MHHS liver transplant program including a site visit by OPTN peer review volunteers in May 2024, substantiated unusual patterns of changes to donor acceptance criteria for liver waitlist candidates, and strong concerns about the conduct of Dr. Bynon and the voluntarily inactivation of its liver transplant program on April 10, 2024;
>
> (5) Dr. Bynon's extensive involvement as a volunteer with OPTN, participation on the National Liver Review Board ("NLRB") from 2018-2022 involving assessment of the medical necessity and utility of MELD exception requests submitted by OPTN member, which requires familiarity with both patient disease and the transplant environment.
>
> (6) The overview of MHHS' liver transplant program from OPTN data and comparison with other liver transplant programs in OPTN Region 4 (Texas and Oklahoma), utilization of donation after circulatory death (DCD) livers and transplants from donors infected with Hepatitis C virus (HCV+);
>
> (7) MHHS's SRTR metrics for the period from the middle of 2020 through the inactivation of the program in 2024 showing worse than expected rates of transplant and death for patients on the liver transplant waitlist at MHHS, despite expected or higher-than-expected offer acceptance rates;

> (8) Application of "throttle" criteria at MHHS- unusually narrow parameters for donor age and weight causing the effect of restricting, or throttling, the proportion of donors from whom livers would be offered to patients, comparison of the fraction of adult patients at MHHS with throttle criteria applied at least once during their time on the waitlist with the rest of OPTN Region 4.

(Docket No. 89 at pp. 5-7).

## II. Legal Standard

Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal court. Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony shoulders the burden of establishing reliability and helpfulness to the jury. *See, e.g.*, *United States v. Rosin*, Case No. 05-143, 2006 U.S. Dist. LEXIS 97272, at *3-8 (M.D. Fla. Jan. 23, 2006) (holding that the United States established the reliability of an expert in a § 1035 prosecution where a dermatologist was allowed to opine on whether a patient's "surgery was medically necessary based on [a review] of the biopsy specimen."). Rule 702 "embodies a liberal policy towards qualification as an expert." *EEOC v. Mod. Grp, Ltd.,* 725 F. Supp. 3d 644, 663 (E.D. Tex. 2024) (internal citation and quotation omitted).

The admission or exclusion of expert testimony is a matter left to the discretion of the trial

court. *Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382 F.3d 546, 563 (5th Cir. 2004). "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (cleaned up). "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 579, 596 (1993). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land,* 80 F.3d at 1077. Typically, juries should "hear the expert's testimony and decide whether the predicate facts are accurate." *Ureteknologia De Mexico S.A. De C. V. v. Uretek (USA), Inc.*, 434 F. Supp. 3d 517, 529 (S.D. Tex. 2020).

Courts are narrowly tasked with making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The focus "must be solely on principles and methodology, not on the conclusions they generate." *Id*. at 595. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)).

**III. Discussion**

The United States does not intend to call Dr. Lynch as an expert witness during its case-in-chief. It may, however, elicit expert testimony from Dr. Lynch as a rebuttal witness. Dr. Lynch is an expert in, *inter alia*, liver transplantation and the appurtenant policies relating to this

procedure. Indeed, Bynon explicitly excluded these policies from his *Daubert* motion. (Docket No. 99 at pp. 1-2.)

**A. Transplantation Policies and Regulations**

A myriad of policies and regulations govern transplantation in the United States. Congress enacted the National Organ Transplant Act in 1984, assigning oversight of organ procurement and allocation to the Secretary of the United States Department of Health and Human Services ("HHS"). *See* 42 U.S.C. §§ 273-274e. The Health Resources and Services Administration ("HRSA") is an HHS agency, responsible for overseeing the nation's transplant system. The Organ Procurement and Transplantation Network ("OPTN") is the "national system that allocates and distributes donor organs to individuals waiting for an organ transplant."[2] "This is an incredibly complex effort." *Adventist Health System/SunBelt, Inc. v. United States HHS*, 16 F.4th 793, 796 (8th Cir. 2021). The United Network for Organ Sharing ("UNOS") is a private, non-profit organization retained by HHS to operate the OPTN, including the national waitlist of transplant candidates.[3]

Dr. Lynch earned Doctor of Medicine and Master of Science (Immunobiology) degrees from Yale University School of Medicine in 2005. In 2014, following his internship and residency in general surgery at the University of Michigan, Dr. Lynch completed a fellowship in abdominal transplant surgery at Emory University. Dr. Lynch has performed hundreds of deceased donor organ procurements, kidney transplants, and liver transplants. He currently serves as the Director

---

[2] Health Systems Bureau: Organ Donation and Transplantation, available at https://www.hrsa.gov/about/organization/bureaus/hsb (last visited Aug. 2, 2026); *see* 42 C.F.R. § 121.2 ("OPTN computer match program means a set of computer-based instructions which compares data on a cadaveric organ donor with data on transplant candidates on the waiting list and ranks the candidates according to OPTN policies to determine the priority for allocating the donor organ(s).").

[3] *See* 42 C.R.F. § 121.2 ("Waiting list means the OPTN computer-based list of transplant candidates.").

of the Division of Transplantation at HRSA, a position he has held since October 2025.

**1. Expertise in Policy**

The United States designates Dr. Lynch as an expert in part because knowledge of transplant policies and procedures exceed that of the average person. The Fifth Circuit has clarified that the "distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008). "The case law is not completely clear on where to draw the line between expert and lay testimony." *United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009) (citing *United States v. Soto-Beniquez*, 356 F.3d 1, 37-38 (1st Cir. 2004) (noting that the First Circuit "upheld a lower court decision to allow the testimony of two pathologists, despite the Government's failure to designate them as experts, when the Government informed the defense before trial that both would testify to several autopsies and provided defendants with copies of the autopsy reports") *contra Doddy v. Oxy USA, Inc*., 101 F.3d 448, 460-61 (5th Cir. 1996) (holding that "testimony about the toxicity of chemicals was not lay opinion because it required specialized training and experience")).

The Sixth Circuit's decision in *United States v. White*, 492 F.3d 380 (6th Cir. 2007) is illustrative. In *White*, trial witnesses testified the Medicare program, a "complex and intricate regulatory scheme [that the Court could not] say that the average lay person, including any Medicare beneficiary, commands a working knowledge of Medicare reimbursement procedures." *Id*. at 403. Allowing these witnesses to "effectively testify as experts without first being qualified" constituted err. *Id*. at 404. Like the witnesses in *White*, Dr. Lynch may testify about "complex and intricate" policies regarding liver transplantation. The average lay person is not familiar with

these policies. For this reason, the United States tenders Dr. Lynch as an expert witness. *See, e.g.*, *Rak v. C-Innovation, L.L.C.*, Case No. 23-619, 2025 U.S. Dist. LEXIS 130815, ar *12 (E.D. La. July 10, 2025) ("Mr. Bridges may provide expert testimony on the maritime industry standards and customs regarding seafarer abandonment, and whether Defendants' actions deviated from those standards. Such testimony is warranted in this case to assist the jury in understanding the unique principles and standards surrounding seafarer abandonment in the maritime industry."); *Webb v. Carnival Corp.*, 321 F.R.D. 420, 426-27 (S.D. Fla. 2017) ("[T]estimony and expert report on industry regulations for cruise safety practices not legal conclusion and admissible [The expert] may testify about the Defendant's detailed policies and procedures that are in place to prevent the over service of alcohol to customers, including those procedures for what to do in the event of dealing with an intoxicated passenger."); *United States v. Prat*, Case No. 26-616, 2026 U.S. Dist. LEXIS 151684, at *7-8 (D.N.M. July 9, 2026) ("Experts may testify to relevant industry practices, law enforcement training, terminology, technical systems, investigative procedures, digital evidence, forensic methodologies, or other specialized subjects within their respective fields of expertise.").

### A. Bynon's Arguments in Support of His Daubert Motion are Unavailing

Bynon sets forth six arguments in support of this motion to preclude expert testimony from Dr. Lynch. First, "various statistical analyses and conclusions drawn" are allegedly inadmissible pursuant to Rule 702, *Daubert*, and the Confrontation Clause. (Docket No. 99 at p. 7.) Second, the United States failed to provide "unique identifiers," such as Bates numbers for the documents "underlying [Dr. Lynch's] opinions." *Id*. at p. 9. Third, Dr. Lynch "cherry-picked data" from transplant programs in Texas and Oklahoma. *Id*. Fourth, testimony regarding the 2024 OPTN Membership and Professional Standards Committee investigation is hearsay. *Id.* at p. 10.

Fifth, Bynon avers that "Dr. Lynch's opinions go directly to [the defendant's] state of mind – the ultimate question reserved to the jury." *Id.* at p. 11. Sixth, Bynon alleges that Dr. Lynch is biased because he is the Acting Director of the Division of Transplantation at HRSA. *Id*. at p. 12.

The relevancy of testimony regarding Bynon's first, third, and fourth arguments is contingent on the defendant's case-in-chief. The second, fifth, and sixth arguments are addressed below.

**A. The United States Has No Obligation to Provide "Unique Identifiers"**

Bynon contends that Dr. Lynch's report and testimony are inadmissible because he "has not identified – by Bates number, database query, extract date, patient chart entry, or any other unique identifiers – the specific documents underlying his opinions." (Docket No. 99 at p. 9.) In sum, Bynon claims that the United States has failed to produce all the records relied on by Dr. Lynch in forming his expert opinions. Federal Rule of Criminal Procedure 16 provides that an expert disclosure must contain:

> a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C); the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii). Ultimately, an expert notice is sufficient if it "state[s] what opinions the expert will give and the bases for those opinions, such that the notified party can discern what opinions the expert holds, why the expert holds those opinions, and how those opinions relate to the facts of the case." *United States v. Vaughan*, Case No. 22-162, 2025 U.S. Dist. LEXIS 48593, at *5-6 (E.D. Tex. Mar. 18, 2025).

The United States filed a notice of intent to present expert testimony on July 2, 2026. (Docket No. 89.) This notice specified that Dr. Lynch reviewed the following materials: (1) OPTN

data and Scientific Registry of Transplant Recipients ("SRTR") reports, (2) MHHS Medical Records of victim A.P., (3) MHHS Medical Records of victim C.C., (4) MHHS Medical Records of victim O.F., (5) UNOS Liver Candidate Registration and Update Forms for A.P. submitted by MHHS Transplant Program, (6) UNOS Liver Candidate Registration and Update Forms for C.C. submitted by MHHS Transplant Program, and (7) UNOS Liver Candidate Registration and Update Forms for O.F. submitted by MHHS Transplant Program. The United States produced these materials to Bynon in accordance with Rule 16. Moreover, Dr. Lynch's report cites the sources he reviewed in forming his expert opinion, including hyperlinks to relevant websites. *See* Ex. B.

Bynon cites no authority for the proposition that the United States must identify the specific document upon which each opinion is based. The notice produced by Bynon offers the same level of specificity. For instance, Dr. Schold relied on: (1) Report of Raymond J. Lynch, M.D., M.S., dated June 7, 2026, and the tables and figures appended with the report; (2) Scientific Registry of Transplant Recipients Program-Specific Reports for the adult liver transplant program at TXHH, released January 2023, July 2023, January 2024, July 2024, and January 2025.accessed 7/28/2026-8/1/26; (3) SRTR Donation and Transplant System Explorer, accessed July 28 and July 30, 2026, as cited in Figures 1 through 5; (4) OPTN policy materials and OPTN and HRSA guidance concerning candidate status and listing parameters issued during 2020 through 2026; (5) Peer-reviewed literature cited under references. *Id*. Consequently, Bynon moves to exclude expert testimony pursuant to a standard that he himself does not satisfy.

**B. Dr. Lynch Will Not Testify About Bynon's State of Mind**

On April 3, 2012, Bynon made 57 modifications to the organ waitlist at MHHS using throttle criteria. These changes "affected 100% of adults on the [MHHS] liver transplant waitlist at this time, across a range of MELD scores." Ex. A at p. 13. According to Dr. Lynch, the "uniform

application of this change to all listed patients regardless of clinical situation suggests decision making independent of consideration of patient disease status or availability for transplant." *Id*. at p. 13. The United States intends to elicit this testimony to demonstrate that his donor criteria manipulations constitute false statements, not "an exercise of 'medical judgment' immune from legal scrutiny." (Docket No. 44 at p. 1.)

Bynon moves to preclude testimony regarding the 2012 waitlist deactivation pursuant to Federal Rule of Evidence 704. This Rule provides that, in a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b); *see United States v. Portillo*, 969 F.3d 144, 170 (5th Cir. 2020) ("We have interpreted Rule 704(b) narrowly, explaining that it only prohibits statements that 'directly opine on the ultimate issue of a defendant's mental state.'") (quoting *United States v. Dvorin*, 817 F.3d 605, 610 (5th Cir. 2016)). Dr. Lynch makes no reference to Bynon's mental state. Rather, he opines that waitlist deactivation was based on considerations other than patient disease status. Dr. Lynch is permitted to draw inferences from the available data to assist the jury in determining whether Bynon's manipulations to donor criteria was an exercise of his medical judgment or a false statement. *See United States v. Wilson*, 335 F.3d 358, 362 (5th Cir. 2003) ("[As] an expert, Adams was permitted to suggest appropriate inferences from facts in evidence because the average juror may not be aware of the significance of [the defendant's] many small transactions with Western Union.") (citing *United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995) (holding that Rule 702 "allows experts to suggest an appropriate inference to be drawn from the facts in evidence if the expert's specialized knowledge is helpful in understanding the facts"). Whether Bynon acted willfully is a question for the jury to decide.

**C. Bias is Fodder for Cross-Examination, Not a Basis to Exclude Expert Testimony**

Bynon maintains that "as the Acting Director of the very HRSA division responsible for federal oversight of OPTN and UNOS, Dr. Lynch cannot possibly serve as a bona fide scientific expert in this case." (Docket No. 99 at p. 12.) Assessing the potential bias of an expert witness "is a task that is properly left to the jury." *Cruz-Vazquez v. Mennonite Gen. Hosp*., 613 F.3d 54, 59 (1st Cir. 2010); *Conerly Corp. v. Regions Bank*, Case No. 08-813, 2010 U.S. Dist. LEXIS 158444, at *3 (E.D. La. Jan. 20, 2010) ("Ordinarily, an expert's alleged bias is an issue of credibility and not admissibility.") (citing *Gideon v. John-Mansville Sales Corp*., 761 F.2d 1129, 1136 (5th Cir. 1985) (holding that an expert's impartiality is "for the jury to evaluate")). Bynon may question Dr. Lynch regarding his purported bias on cross-examination. *See Dunn v. Sears, Roebuck & Co*., 639 F.2d 1171, 1174 (5th Cir. 1981) (noting that the potential bias of an expert witness "may be explored on cross-examination and argued to the jury"). Accordingly, Bynon's request to preclude Dr. Lynch from offering expert testimony because of an allege bias is unavailing.

**IV. Conclusion**

For the reasons set forth above, the United States requests that the Court deny Bynon's

motion to exclude the testimony of Dr. Raymond Lynch. (Docket No. 99.)

Respectfully Submitted,
AARON F. REITZ
United States Attorney
Southern District of Texas

By: *<u>/s/ Amanda Alum</u>*
Amanda Alum
Suzanne Elmilady
Sherin Daniel
Anthony Franklyn
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been delivered on counsel of record via ECF upon filing.

<u>*/s/ Amanda Alum*</u>
Amanda Alum
Assistant United States Attorney