**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIM. NO. H-26-023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DR. MATTHEW COOPER**

Defendant John Stevenson Bynon, Jr. ("Bynon") moves to exclude the testimony of Dr. Matthew Cooper ("Cooper"). (Docket No. 103.) The United States provided notice of Dr. Cooper's testimony in anticipation of Bynon raising the same legal defense(s) at trial as what was previously conveyed to the Court during oral and written arguments. However, based on the expert reports provided by Bynon on August 4, 2026, the United States no longer anticipates needing to call Dr. Cooper as an expert witness during its case-in-chief. It may, however, elicit expert testimony from Dr. Cooper as a rebuttal witness. For this and the reasons set forth below, the Court should deny the motion to exclude Dr. Cooper's testimony.

## I. Background

The Medical Review Board ("MRB") at Memorial Hermann Health System ("MHHS") approved five patients for liver transplantation.[1] Transplant coordinators then placed these patients on the national organ waitlist, entering their biographical information on a computer program where this waitlist is maintained. Bynon subsequently falsified the patients' donor criteria, a unilateral decision made without consulting or informing patients and members of the transplant team. Bynon concedes that "he set the donor age and weight criteria (*e.g.*, at the weight and age

[1] This board consisted of hematologists, surgeons (at times, including Bynon), nurses, transplant coordinators, social workers, dietitians, and other health care professionals all working at the MHHS Transplant Program

of a small child) so as to preclude organ offers for an adult transplant patient." (Docket No. 29 at p. 4.) For instance, Bynon stated that patient A.P. could only receive a liver donation from a person with the following profile: age, 0 – 8 years old; weight, 70 lbs. – 300 lbs. This statement is false. A.P. was eligible to receive offers from adult donors, just as the MRB had determined the previous day.

On January 14, 2026, a grand jury returned an indictment charging Bynon with five counts of making a false statement relating to health care matters in violation of 18 U.S.C. § 1035. (Docket No. 1.) To sustain a conviction on the § 1035 counts, the United States must prove that "(1) the defendant made a materially false, fictitious, or fraudulent statement or misrepresentation; (2) in connection with the delivery of [or payment for] health care benefits; and (3) [he] did so knowingly and willfully." *United States v. Hamilton*, 37 F.4th 246, 260 (5th Cir. 2022) (citing *United States v. Dailey*, 868 F.3d 322, 330 (5th Cir. 2017)). Bynon subsequently entered a plea of not guilty. (Docket No. 8.) Trial is set to commence on August 24, 2026. (Docket No. 73.)

The United States filed a notice of intent to present expert testimony on July 2, 2026. (Docket No. 89.) Three expert witnesses are named in this notice: (1) Dr. Matthew Cooper, (2) Dr. Raymond Lynch, and (3) Shauna Schwarm. *Id*. Bynon moved to exclude expert testimony from Dr. Cooper on July 22, 2026. (Docket No. 103.) On August 5, 2026 at 11:43 PM, Bynon informed the United States that he intends to call Dr. Jesse Schold and Dr. Sophoclis Alexopoulosas as expert witnesses at trial. *See* Ex. A. A *Daubert* hearing is scheduled for August 17, 2026. (Docket No. 113.)

**A. Dr. Cooper's Qualifications and Expert Opinions**

Dr. Cooper earned a Doctor of Medicine degree from Georgetown University School of Medicine in 1994. He subsequently completed a residency in general surgery and a fellowship

in transplant surgery from the Medical College of Wisconsin Affiliated Hospitals and Johns Hopkins Hospital, respectively. Dr. Cooper currently serves as the Chief of Transplantation and the Director for the Solid Organ Transplant Service Line at Froedtert Memorial Lutheran Hospital and Children's Wisconsin, the Mark B. Adams Distinguished Professor of Surgery and Tenured Professor at the Medical College of Wisconsin.

He prepared expert reports pertaining to the five patients named in the indictment after reviewing records from Memorial Herman Health System ("MHHS") and the United Network for Organ Sharing ("UNOS") . *See* Ex. A. These records memorialize the patients' medical conditions before and during their placement on the organ waitlist. *Id.* Dr. Cooper notes that MHHS conducted a "rigorous and lengthy evaluative process including radiological imaging, endoscopy, and multiple blood tests" before the MRB approved them for liver transplantation. *Id*. at p. X. He identifies the transplant coordinator who input the patient's initial donor criteria, setting "broad and inclusive" parameters for potential donors. *Id*. at p. X. The expert reports then state that Bynon changed the donor criteria "without identifiable communication regarding the rationale in the medical records." *Id*. Notably, "other changes made by staff at [MHHS]" were visible on the patients' medical charts. *Id*. The opinions formed by Dr. Cooper include the following:

| | |
|---|---|
| A.P. | Reviewing hospital records there is no indication that any changes in [A.P.'s] clinical condition warrant any chang [to donor criteria] especially one that would eliminate any potential deceased donor organs based upon very limited acceptance criteria. |
| C.C. | Despite ongoing complications expected in similar patients with such significant liver disease, no indication can be identified in the medical record that liver transplantation was prohibited. In fact, the frequency and compression of time for such events warranted increased donor options for [C.C.]. |
| R.O. | In concert with these multiple changes made by Dr. Bynon, I cannot find indication in the medical records that neither describes the rationale of an ongoing effort to decrease organ offers by limiting donor acceptance criteria nor the decision in late December to |

| | |
|---|---|
| | reopen the criteria. |
| P.P. | [Multiple] entries continue to indicate [that] she is a good candidate for liver transplantation, is optimized for liver transplantation, and speak to the expected benefits of early transplantation. The is no indication in the medical records that neither describes the rationale of an ongoing effort to decrease organ offers by limiting donor acceptance criteria nor a return to the original criteria. |
| O.F. | [On] 12/24/2023 at 14:38 and without identifiable communication regarding the rationale in the medical record or substantive changes to [O.F.'s] condition, Dr. Bynon personally accessed the UNet system and altered the Liver Donor Acceptance Criteria for [O.F.] decreasing the maximum acceptable donor age to 8 years and the maximum acceptable weight to 250 lbs. effectively eliminating organ offers for [O.F.] |

The United States does not intend to elicit expert opinion from Dr. Cooper during its case-in-chief. It may, however, elicit expert testimony from Dr. Cooper as a rebuttal witness. Dr. Cooper is an expert in, *inter alia*, the "medical condition of [the victims], the treatment provided during the relevant time period by Dr. Bynon," and "whether the medical judgment exercised was consistent with accepted standards and practices applicable to transplant medicine and treatment of patients with end-stage liver disease." (Docket No. 89 at p. 4.)

## II. Legal Standard

Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal court. Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony shoulders the burden of establishing reliability and helpfulness to the jury. *See, e.g.*, *United States v. Rosin*, Case No. 05-143, 2006 U.S. Dist. LEXIS 97272, at *3-8 (M.D. Fla. Jan. 23, 2006) (holding that the United States established the reliability of an expert in a § 1035 prosecution where a dermatologist was allowed to opine on whether a patient's "surgery was medically necessary based on [a review] of the biopsy specimen."). Rule 702 "embodies a liberal policy towards qualification as an expert." *EEOC v. Mod. Grp, Ltd.,* 725 F. Supp. 3d 644, 663 (E.D. Tex. 2024) (internal citation and quotation omitted).

The admission or exclusion of expert testimony is a matter left to the discretion of the trial court. *Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382 F.3d 546, 563 (5th Cir. 2004). "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (cleaned up). "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 579, 596 (1993). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land,* 80 F.3d at 1077. Typically, juries should "hear the expert's testimony and decide whether the predicate facts are accurate." *Ureteknologia De Mexico S.A. De C. V. v. Uretek (USA), Inc.*, 434 F. Supp. 3d 517, 529 (S.D. Tex. 2020).

Courts are narrowly tasked with making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–

93. The focus "must be solely on principles and methodology, not on the conclusions they generate." *Id*. at 595. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)).

**III. Discussion**

Bynon sets forth seven arguments in support of this motion to preclude expert testimony from Dr. Cooper. First, he alleges that Dr. Cooper attempts to "[tell] the jury that Dr. Bynon deliberately eliminated lifesaving opportunities for each patient" in violation of Federal Rule of Evidence 704(b). (Docket No. 103 at p. 8.) Second, Bynon contends that evidence relating to "specific patient outcomes" is inadmissible. *Id*. at p. 11. Third, testimony regarding the 2024 Membership and Professional Standards Committee investigation is hearsay. *Id.* at p. 12. Fourth, he purports that Dr. Cooper failed to describe the "analytical steps" he took in concluding Bynon manipulated donor criteria for no discernible reason. *Id*. at p. 12. Fifth, Dr. Cooper prepared the expert report "in support of this criminal prosecution." *Id*. at p. 15. Sixth, moral characterizations such as "reprehensible" and "betrayed" are "not grounded in transplant medicine." *Id*. at p. 16. Seventh, Bynon contends that opinions regarding "moral condemnation" and causation are inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403. *Id*. at p. 17.

The United States does not intend to elicit testimony that Bynon's actions were "reprehensible." Moreover, any attempt to elicit testimony regarding causation and the 2024 Membership and Professional Standards Committee investigation will depend on Bynon's case-in-chief. Bynon's first, fourth, and fifth arguments are addressed below.

### A. Testimony Regarding Bynon's State of Mind

Bynon asserts that Federal Rule of Evidence 704(b) precludes testimony regarding his state of mind. *Id*. at p. 9. This Rule provides that, in a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b); *see United States v. Portillo*, 969 F.3d 144, 170 (5th Cir. 2020) ("We have interpreted Rule 704(b) narrowly, explaining that it only prohibits statements that 'directly opine on the ultimate issue of a defendant's mental state.'") (quoting *United States v. Dvorin*, 817 F.3d 605, 610 (5th Cir. 2016)). The United States has no intention of asking Dr. Cooper about Bynon's mental state. In fact, the parties concur that a "qualified transplant surgeon" may opine "about a patient's clinical condition on a given date and whether such patient was medically suitable for organ-transplantation surgery." (Docket No. 103 at p. 10.) This is precisely what the United States intends to do at trial: Elicit expert testimony that Bynon prevented eligible candidates from receiving organ offers.

### B. Expert Opinion Regarding a Lack of Rationale for Bynon's Donor Criteria Manipulations

Dr. Cooper concludes that the patient records are devoid of any reason or basis that would warrant the manipulations made by Bynon. This conclusion is based on his assessment of the patients' medical conditions and the absence of "documented rationale" for preventing patients from receiving organ offers. According to Bynon, Dr. Cooper's reports "disclose no methodology whatsoever for distinguishing a clinically justified criteria change from a non-clinically justified one." *Id*. at p. 13. This methodology is, however, outlined on the third page of his motion *in limine*. Bynon notes that Dr. Cooper sets forth the patients' medical conditions and examined their waitlist history. *Id*. at p. 3. Dr. Cooper relied on this information, along with his extensive training and education as a transplant surgeon, to analyze whether the donor criteria employed by Bynon

were justified. He determined that they were not. *See Estate of Mont. v. Lewisville Indep. Sch. Dist., Case No.*, 2012 U.S. Dist. LEXIS 66190, at *10 (E.D. Tex. 2012) ("A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[No] one denies that an expert might draw a conclusion from a set of observations and specialized experience.")).

Bynon claims that Dr. Cooper failed to articulate the "objective standards" used by transplant surgeons in assessing whether changes to donor criteria are appropriate. *Id*. Dr. Cooper will discuss his education and experience in organ transplantation, including the factors he considered in concluding that the changes made by Bynon lacked a clinical basis. He is entitled to draw negative inferences based on an absence of evidence. *See McLaughlin v. Tesla,* Case No. 22-7849, 2024 U.S. Dist. LEXIS 163767, at *12-14 (N.D. Ca. Sept. 11, 2014) (denying the defendant's *Daubert* motion to exclude expert testimony based on the "absence of any medical record or opinion reflecting injuries" to the plaintiff, allowing the expert to opine that "self-reported head injuries" are "unsupported by the medical records*"); Narsimhan v. Lowe's Home Ctrs*., Case No. 19-1255, 2022 U.S. Dist. LEXIS 33403, at *27-30 (N.D. Ill. Feb. 25, 2022) (denying the plaintiff's *Daubert* motion to exclude expert opinion "that the lack of notation of lower extremity pain in the chiropractic records was evidence that Plaintiff was either not experiencing such pain or was not experiencing pain 'sufficient to be associated with [chronic regional pain syndrome]"). Because Dr. Cooper bases his opinion on the pertinent facts and data, the same information that transplant surgeons routinely rely on to assess a patient's candidacy for transplantation, Bynon's motion to exclude expert testimony should be denied.

**C. The Fact that Dr. Cooper Prepared Expert Reports for the Purpose of this Litigation is Not a Basis to Exclude his Testimony**

Bynon notes that Dr. Cooper prepared his reports for the purpose of this litigation and that he received compensation for doing so. (Docket No. 103 at p. 16.) Bynon then cites *Daubert* for the proposition that expert testimony developed "expressly for purposes of testifying" warrants "heightened scrutiny." *Id*. at p. 15 (citing 43 F.3d 1317). *Dauber*t does not, however, articulate different standards for expert opinions developed in the course of a specific litigation as opposed to expert opinion resulting from independent research. The citation invoked by Bynon states that courts should consider:

> whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying. That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture. But in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office.

*Daubert*, 43 F.3d at 1317. Accordingly, the fact that the United States retained Dr. Cooper as an expert witness is a factor for the Court to consider in conducting its *Daubert* analysis. Indeed, Bynon seeks to elicit testimony from two experts retained for this litigation. By this logic, the Court should subject Bynon's experts to a "heightened" standard on the same basis. Compensation of an expert witness is impeachment material, not a reason to exclude their testimony. *Sartin v. Wal-Mart Stores, L.P.*, Case No. 01-014, 2014 U.S., Dist. LEXIS 135251, at *2-3 (S.D. Miss. Sept. 25, 2014) (noting that a "party should be allowed to cross-examine an adverse party's expert witness regarding compensation to show bias or interest on the part of the witness") (citing *Collins v. Wayne Corp*., 621 F.2d 777, 783 (5th Cir. 1980)). Consequently, the fact that the United States retained Dr. Cooper for his expert opinion is not a reason to exclude his testimony.

## IV. Conclusion

For the reasons set forth above, the United States requests that the Court deny Bynon's motion to exclude the testimony of Dr. Matthew Cooper. (Docket No. 103.)

Respectfully Submitted,
AARON F. REITZ
United States Attorney
Southern District of Texas

By: */s/ Amanda Alum*
Amanda Alum
Suzanne Elmilady
Sherin Daniel
Anthony Franklin
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been delivered on counsel of record via ECF upon filing.

*/s/ Amanda Alum*
Amanda Alum
Assistant United States Attorney