**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:26-cr-00023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION IN LIMINE REGARDING 42 CFR PART 482 SUBPART E**

Dr. Steve Bynon, through his counsel, submits this reply to the government's response (ECF No. 108) to Dr. Bynon's motion in limine to prevent the government from introducing any evidence of alleged violations of provisions of 42 C.F.R., Part 482, Subpart E ("Requirements of Specialty Hospitals") – including, most significant, 42 C.F.R. § 482.94 (ECF No. 91). The government's response makes several arguments: (1) the regulations are relevant because Dr. Bynon signed a Medicare provider enrollment form in 2016 (seven years before the dates of the alleged offenses charged in the indictment) that generally agreed to "abide by the Medicare laws, regulations, and program instructions" applicable to Dr. Bynon personally and the UT Health Science Center; (2) Fifth Circuit (and other courts') precedent supports the admission of evidence of a defendant's knowing violation of an administrative regulation in order to prove the *mens rea* of a federal criminal offense; (3) the government does not intend to argue at trial that "a violation of 42 C.F.R. § 482.94 is conclusive proof that Bynon is guilty of violating Section 1035" and, instead, will merely argue that a violation of "this regulation constitutes evidence of Bynon's intent to violate Section 1035"; and (4) a "limiting instruction would obviate any risk of 'bootstrapping' a Section 1035 violation." Government's Response, at 7-9. The government's arguments all lack merit.

***First***, the cited cases are readily distinguishable. In all the cases that are potentially relevant,[1] there was evidence that the defendants were *actually aware* of the relevant regulations at issue (and realized the regulations' relevance to the defendants' illegal conduct). *See United States v. Parks*, 68 F.3d 860, 867 (5th Cir. 1995); *United States v. Njoku*, 737 F.3d 55, 66 (5th Cir. 2013); *United States v. Fogle*, Case No. 24-30229, 2025 WL 1380071, at *1 (5th Cir. May 13, 2025); *United States v. Nowlin*, 640 Fed. Appx. 337, 342 (5th Cir. 2016) ("In addition, other evidence presented at trial sheds further light on the extent of Nowlin's knowledge of relevant program regulations and her obligation to comply with them.");[2] *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019); *United States v. Starnes*, 583 F.3d 196, 212-13 (3rd Cir. 2009); *United States v. Perry*, 659 Fed. Appx. 146, 154 (4th Cir. 2016); *United States v. Rashan*, __ F.Supp.3d ___, 2026 WL 962444, *8 (S.D.N.Y. Apr. 9, 2026).[3] There is no such evidence in this case.

The government's reliance on Dr. Bynon's 2016 certification that he agreed to "abide by the Medicare laws, regulations, and program instructions that apply to me [or the transplant program]" is hardly the same thing as being specifically aware of a particular relevant regulation

---

[1] The government's reliance on *United States v. Barnes*, 979 F.3d 283 (5th Cir. 2020), is misplaced. The *defendant* was the one in that case who wanted to introduce regulations – not the prosecution. *Id.* at 301 ("At trial, Barnes sought to have several Medicare regulations read to the jury as instructions.").

[2] The government's parenthetical to *Nowlin* suggests that Nowlin's signing the Medicare enrollment form's "certifications" was itself sufficient.

[3] In *Rashan*, the issue concerned a defendant's knowledge of regulations concerning insurance billing codes. The court noted:

> The jury in Rashan's case will receive affirmative evidence supporting the inapplicability of the codes to the services for which ClearMD sought reimbursement. That evidence, as reviewed above, will centrally include the text and definitions of, and/or guidance associated with, the codes at issue. ***The Government has thus identified authority that would have alerted Rashan that the challenged billing practices were impermissible***. …. And … Rashan's motion does not point to any ambiguity in the billing codes that would have made those practices arguably appropriate.

*Rashan*, 2026 WL 962444, *8 (emphasis added).

that was violated. There are many potentially applicable Medicare laws and regulations that could apply to an individual doctor or a hospital's transplant program. And the certification leaves it up to the doctor to determine which regulations and laws "apply." That same certification also noted that the Medicare laws and regulations "are available through the fee-for-service contractor." It was not as if the certification that Dr. Bynon signed referenced 42 C.F.R. § 482.94. And the government has offered no evidence that Dr. Bynon was specifically aware of it.

***Second***, the government has failed to rebut Dr. Bynon's argument in his motion that his adjustments of donor age and weight criteria did not violate, or cause Memorial Hermann to violate, § 482.94. In particular, Dr. Bynon's adjustments of age and weight criteria did not "remove" (or even "inactivate") the patients from the waitlist and also did not change the *patients*' "clinical information" (as the adjustments solely precluded offers from organ *donors*). Therefore, under the plain language of § 482.94, there was nothing to "update" with respect to the waitlist and no obligation to inform the patients of Dr. Bynon's adjustments. Nothing in the plain language of § 482.94 prohibits the use of adjustments of age and weight criteria for the purpose of precluding organ offers or required patient notification of such adjustments – *so long as a patient remains on the waitlist* (which each of the five patients listed in the indictment indisputably did during the relevant time periods).[4] Section 482.94 simply does not apply to an adjustment of donor acceptance criteria to preclude organ offers or even to a Status-7 "inactivation."

The government nevertheless contends that "[w]hether Bynon removed patients from the waitlist constitutes a factual question for the jury to consider, not a basis to exclude [evidence of

[4] The plain language of § 482.94 only required notification to a patient of (1) his or her "placement" on the waitlist; (2) the decision "not to place the patient on" the waitlist; (3) the transplant program's "inability to make a determination" about whether to place the patient on the waitlist; and (4) the patient's "removal" from the waitlist. *See* 42 CFR § 482.94(c).

42] C.F.R. § 482.94." Government's Response, at 6. That argument is meritless. Dr. Bynon does not dispute what he did (adjusting age and weight criteria without inactivating or removing any patient from the wait list). The question raised in Dr. Bynon's motion is not what happened, but whether that conduct falls within the regulatory categories that trigger § 482.94(c)'s notification and record-keeping requirements – a question of regulatory interpretation squarely for this Court, not the jury.

Where, as here, the operative facts are undisputed, interpreting what a regulation requires as applied to those facts is a legal determination the Court can and should make before trial. If the Court agrees that Dr. Bynon's undisputed conduct did not trigger § 482.94's notification requirements, then any evidence about § 482.94 – including the April 4, 2024 Texas HHS report's contrary conclusion is not merely unhelpful, it is legally incorrect, and presenting it to the jury as evidence of a "violation" would affirmatively mislead the jury about what the law required, independent of any relevance to intent and willfulness.

***Third***, the government's response failed to address Dr. Bynon's significant argument made in his motion that § 482.94's requirements that Dr. Bynon allegedly violated are distinct from the conduct actually charged in the indictment (i.e., his adjustments of age and weight criteria to preclude organ offers) and, for that reason, evidence of his alleged regulatory violations is inadmissible. *See United States v. Burden*, 934 F.3d 675, 692 (D.C. Cir. 2019). The government's response does not identify any way in which Dr. Bynon's alleged violations of § 482.94's requirements – i.e., failing to notify the MRB or his patients of his internal holds or failing to update a patient's chart – tends to prove that Dr. Bynon knew his internal holds were unlawful (assuming they even qualify as "false" "statements"). The government's silence on this point is telling, and this Court should not permit the government to introduce evidence of alleged

regulatory shortcomings that have no logical connection to the willfulness of the specific act charged. Admission of evidence about these alleged regulatory violations risks exactly the danger identified in *Burden*: a jury invited to treat any evidence of "a guilty mind – whatever its object" as proof of willful commission of the charged offense. *Burden*, 934 F.3d at 692. Therefore, assuming *arguendo* that (1) Dr. Bynon's conduct actually violated § 482.94, and (2) the government has evidence that Dr. Bynon was aware of § 482.94's requirements, the government still should be prohibited from offering any evidence of such alleged violations of § 482.94.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the motion in limine, Dr. Bynon respectfully requests that the Court exclude all testimony and evidence of alleged violations of 42 C.F.R. Part 482, Subpart E, including the Texas HHS report.

Respectfully submitted,

*/s/ Samy Khalil*

Samy Khalil
Texas Bar No. 24038997
John Kinchen
Texas Bar No. 00791027
**KHALIL KINCHEN LLP**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
samy@khalilkinchen.com
john@khalilkinchen.com

Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, Maryland 20878
202.975.9105
brentevannewton@gmail.com

*Attorneys for Dr. Steve Bynon*

**CERTIFICATE OF SERVICE**

On August 7, 2026, I electronically filed this reply with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Samy Khalil*
Samy Khalil