**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:26-cr-00023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

# DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF HIS MOTIONS TO EXCLUDE THE TESTIMONY OF DR. RAYMOND LYNCH AND DR. MATTHEW COOPER

Dr. Steve Bynon, through his counsel, files this consolidated reply in support of his motions to exclude the testimony of Dr. Raymond Lynch (ECF No. 99) and Dr. Matthew Cooper (ECF No. 103), and would show the following:

## I. Introduction

The government's two responses reflect a recurring pattern. The government advances a theory; waits for Dr. Bynon to identify the factual or legal defect in it; abandons the theory; and adopts a new one. It has now done so repeatedly, and, most recently, with respect to both of its experts at once. Because the responses do not defend the challenged opinions so much as relocate them—to rebuttal, to "it depends," and to a new theory—this reply addresses the new positions the responses take.

***First***, the government put its experts' opinions on Dr. Bynon's state of mind into two written reports. Dr. Cooper opines that Dr. Bynon's conduct was a "*deliberate* effort to eliminate" lifesaving opportunities for each patient and that the outcome would have differed "[h]ad a *sincere* and committed effort been made." Dr. Lynch opines that Dr. Bynon's waitlist changes "suggest[] decision making independent of consideration of patient disease status," and speculates about Dr. Bynon's motives in relation to the timing of multidisciplinary conferences. When Dr. Bynon

invoked Rule 704(b), the government answered that it "has no intention of asking Dr. Cooper about [Dr.] Bynon's mental state," ECF No. 118 at 7, and that "Dr. Lynch makes no reference to [Dr.] Bynon's mental state," ECF No. 116 at 11. Neither report has been withdrawn or amended. Only the government's characterization of them has changed.

***Second***, the government built post-adjustment patient outcomes into its reports. Dr. Cooper opines that Dr. Bynon's conduct "ultimately led to" the deaths of two patients. Dr. Lynch's report addresses "what happened to the patients listed in the indictment *after* Dr. Bynon adjusted their donor acceptance criteria." That is precisely the evidence this Court excluded under Rule 403 and made the subject of a limine order. *United States v. Bynon*, __ F. Supp. 3d __, 2026 WL 1595296, at *12-13 (S.D. Tex. June 3, 2026). When Dr. Bynon said so, the government answered that any such testimony "will depend on Bynon's case-in-chief." ECF No. 118 at 6. The reports have not changed – only the government's representation about *when* it intends to use them has.

***Third***, the government told this Court, on the record, exactly what its medical expert would prove. On June 8, 2026, in response to direct questioning, the government committed to presenting "a medical expert saying Dr. Bynon's adjustment of the criteria was wrong, not just false, but wrong because, in fact, medically they were — they were capable of withstanding the transplant procedure, surviving, and thriving." Tr. of June 8, 2026 Scheduling Conference at 7 ("Tr."). Two months later, the government has withdrawn *both* of its experts from its case-in-chief entirely. ECF No. 116 at 1; ECF No. 118 at 1.

***Fourth***, the government now reaches back more than a decade. Its Lynch response reveals that the government "intends to elicit" testimony about waitlist modifications allegedly made on April 3, 2012. ECF No. 116 at 10–11. That is more than a decade before any conduct charged in the indictment. The government offers it to show that Dr. Bynon's 2023 adjustments were not "an

exercise of 'medical judgment.'" *Id.* at 11. As set out below, that is a propensity argument, offered without the notice Rule 404(b)(3) requires.

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty … whose interest … in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The United States Attorney "may prosecute with earnestness and vigor," but "while he may strike hard blows, he is not at liberty to strike foul ones." *Id.* A civil litigant may treat its theories as fungible and its experts as interchangeable, adjusting both as the contest unfolds. A federal prosecutor may not. The government's serial repositioning—advancing an expert theory, abandoning it when Dr. Bynon identifies its defect, and substituting another—is the conduct of a party trying to win, not a sovereign trying to do justice.

Each pivot has followed immediately upon Dr. Bynon's identification of a factual or legal defect. And each has been offered not as a concession that the opinions are inadmissible, but as a temporary relocation of them – from its case-in-chief to rebuttal, from a stated intention to a disclaimed one, from "we will prove" to "it depends." The opinions themselves remain in signed reports the government has never withdrawn and still intends to place before this jury if it decides the trial warrants it.

Rule 704(b) is not satisfied by counsel's promise about which questions will be asked. Rule 403 and this Court's limine order are not satisfied by a representation that inadmissible evidence is being held in reserve. The Court has set these questions for a hearing before trial. *See* Order, ECF No. 124 (Aug. 10, 2026) (denying the government's motion to defer the *Daubert* hearings). To the extent possible, Dr. Bynon respectfully submits that at least some of these

questions should be resolved on the papers before the hearing, and by an order that fixes the limits of each expert's testimony rather than leaving them to the government's assurances.

## II.
## The Government's Concessions Should Be Memorialized in an Order, Not Left to Its Discretion Mid-Trial

The government's responses concede far more than they contest. As to Dr. Cooper, the government states that it "no longer anticipates needing to call Dr. Cooper as an expert witness during its case-in-chief"; that it "does not intend to elicit testimony that [Dr.] Bynon's actions were 'reprehensible'"; that testimony "regarding causation and the 2024 [MPSC] investigation will depend on Bynon's case-in-chief"; and that it "has no intention of asking Dr. Cooper about Bynon's mental state." ECF No. 118 at 1, 6, 7. As to Dr. Lynch, the government states that it "does not intend to call Dr. Lynch as an expert witness during its case-in-chief" and that the relevance of his statistical analyses, his Region 4 comparisons, and the 2024 MPSC investigation "is contingent on the defendant's case-in-chief." ECF No. 116 at 5, 9.

On the merits of those categories, the government offers no defense at all. It does not argue that Dr. Cooper's causation opinions satisfy Rule 702. It does not argue that either expert may permissibly recite the MPSC's findings consistent with Rule 703 and the Confrontation Clause. It does not argue that "reprehensible" is a transplant-medicine concept. It says only that it does not presently plan to offer that testimony.

A stated intention is not a ruling. It binds no one, it is revocable at will, and—as the history recounted above demonstrates—the intentions of this prosecution team have changed repeatedly. Both experts remain designated. Both reports remain operative. And the government has expressly reserved the right to call both witnesses, with those opinions, depending on how it assesses Dr. Bynon's defense.

If the government genuinely does not intend to elicit these categories of testimony, it can have no objection to an order confirming that it may not. Dr. Bynon respectfully requests an order confirming that neither Dr. Cooper nor Dr. Lynch may testify, in the government's case-in-chief or in rebuttal, that:

(i) Dr. Bynon acted "deliberately," without a "sincere" effort, or with any particular state of mind, or that his decisions were made "independent of consideration of patient disease status";

(ii) Dr. Bynon's conduct caused or contributed to any patient's death or adverse health outcome, or that any patient would have been transplanted with an "expectant positive outcome";

(iii) Dr. Bynon's conduct was "reprehensible," deceptive, or a betrayal, or that any patient was "deceived," "misinformed," or "disrespected";

(iv) the OPTN Membership and Professional Standards Committee reached findings concerning Memorial Hermann or Dr. Bynon, including any finding of "a culture of intimidation" or "retaliation for reporting potential problems"; or

(v) Dr. Bynon made waitlist entries or donor-criteria adjustments in 2012, or at any other time outside the time period charged in the indictment.

Such an order costs the government virtually nothing in terms of admissible evidence. It costs Dr. Bynon a fair trial if the government's intentions change again after the jury is empaneled.

## III.
## The Government Has Now Abandoned Precisely What It Told This Court Its Medical Expert Would Prove

On June 8, this Court pressed the government to state its theory. The exchange bears quoting, because the government's present position cannot be reconciled with it:

> **THE COURT:** Well, is the Government going to prove at trial, or try to prove at trial, that each of the five patients were, in fact, healthy enough to accept a transplant at the time that this internal hold, whatever label you want to put on it, was in effect, and that Dr. Bynon thought they were healthy enough to accept the transplant?
>
> **MR. FRANKLYN:** Yes. …

> **THE COURT:** Okay. And you'll have a medical expert to opine as to that?
>
> **MR. FRANKLYN:** Yes, Your Honor. Yes.
>
> **THE COURT:** For each of the five patients, you're going to have a medical expert saying Dr. Bynon's adjustment of the criteria was wrong, not just false, but wrong because, in fact, medically they were — they were capable of withstanding the transplant procedure, surviving, and thriving?
>
> **MR. FRANKLYN:** Yes, ma'am.

Tr. at 6-7. That was not an aside. It was the government's direct answer to this Court's direct question about what it intended to prove and through whom. Dr. Cooper and Dr. Lynch are the only experts the government designated.

Within the same hearing, however, the government began retreating. Asked whether its expert would in fact testify that the patients would have survived and thrived, the government conceded it was "not sure we can offer an expert who will say they would have thrived," and acknowledged the question was "tricky." *Id.* at 11. This Court immediately identified the significance of the answer: "I think that's Dr. Bynon's point, that it's tricky." *Id.*

Two months later, the government has resolved its own contradiction by removing both medical experts from its case-in-chief. The theory described to this Court on June 8 – that a medical expert would prove, patient by patient, that Dr. Bynon's adjustments were "wrong" because the patients were "capable of withstanding the transplant procedure" and "surviving" (but perhaps not "thriving") – has apparently been replaced by a single sentence: the government will "[e]licit expert testimony that Bynon prevented *eligible* candidates from receiving organ offers." ECF No. 118 at 7 (emphasis added).

That reformulation does a great deal of work in one word. "Eligible" assumes the disputed fact—that each patient was medically suitable to receive, undergo, and survive a transplant on the

specific date the criteria were adjusted. That is a specialized medical question, and it is one on which qualified experts must testify: Dr. Bynon's medical expert will opine that these patients were not suitable. The government, by contrast, has designated no expert who has offered that opinion – Dr. Cooper is the only expert who purported to, and the government has withdrawn him from its case-in-chief. The government has recently added several members of the Memorial Hermann Medical Review Board to its witness list, but they cannot supply this testimony: none has been designated as an expert, and the government has submitted no expert reports from them disclosing such an opinion on the medical eligibility of these patients on the dates at issue, much less all the requisite Rule 16 requirements for such an opinion. The government cannot resolve a genuine medical dispute in its own favor by assertion – least of all with an adjective in a brief – when it has designated no admissible expert to prove it. The jury must resolve that dispute on the evidence.

## IV.
## Both Reports Directly Opine on Dr. Bynon's State of Mind, and the Government's Disclaimers Do Not Cure Them

Both responses invoke *United States v. Portillo*, 969 F.3d 144, 171 (5th Cir. 2020) (quoting *United States v. Dvorin*, 817 F.3d 438, 448 (5th Cir. 2016)), for the proposition that Rule 704(b) "only prohibits statements that 'directly opine[] on the ultimate issue [of a defendant's] mental state.'" ECF No. 116 at 11; ECF No. 118 at 7. Dr. Bynon accepts that formulation. It does not assist the government, because both reports do exactly that.[1]

[1] The government's parenthetical cites *Dvorin* as "817 F.3d 605, 610." The correct citation is *United States v. Dvorin*, 817 F.3d 438, 448 (5th Cir. 2016). The pages the government cites (605, 610) appear to correspond to *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994), the decision *Portillo* cites immediately after *Dvorin*.

### A. Dr. Cooper's reports use mental-state vocabulary on their face.

In each of his five reports, Dr. Cooper opines that Dr. Bynon's criteria adjustments were a "*deliberate* effort to eliminate opportunities" for the patient to receive a lifesaving transplant. The word "[d]eliberate" is not a clinical finding, and it is not supported by transplant-medicine methodology. In each report, Dr. Cooper further opines that the outcome would have differed "[h]ad a *sincere* and committed effort been made." "Sincere" is likewise a mental-state word—and it is the precise vocabulary by which the falsity of an opinion is measured. *Bynon*, 2026 WL 1595296, at *7; *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (stating that an opinion is untrue if "not sincerely held").

The R.O. report illustrates how far this reaches. Dr. Cooper writes that Dr. Bynon's changes were "a *deliberate* effort to eliminate opportunities for [R.O.] to the *lifesaving* repeat liver transplant he *expected* to receive," and that "these actions *ultimately led to his death*." That is not a standard-of-care opinion. It is an expert opinion that Dr. Bynon deliberately deprived a patient of a lifesaving operation and thereby caused his death. Rule 704(b) forecloses such an opinion.[2]

[2] As pointed out in our *Daubert* motions, it also violates the limine order in place.

## B. Dr. Lynch's report infers Dr. Bynon's reasoning from statistics.

The government insists that "Dr. Lynch makes no reference to Bynon's mental state" and "opines that waitlist deactivation was based on considerations other than patient disease status." ECF No. 116 at 11. Those two statements cannot both be true. An opinion that a physician's decisions were "*independent of consideration* of patient disease status" is an opinion about what that physician did and did not consider. Considering is a mental act. Dr. Lynch's report states that the "uniform application of this change to all listed patients regardless of clinical situation *suggests that decision making independent of considerations of patient disease status or availability for transplant*." Report at 13. Stripped of its statistical framework, that is an opinion that Dr. Bynon was not thinking about his patients' medical conditions when he made these entries.

The two authorities the government offers do not support the inference it seeks to draw. The government appears to rely on *United States v. Wilson*, 355 F.3d 358 (5th Cir. 2003), and *United States v. Willey*, 57 F.3d 1374 (5th Cir. 1995), but those cases stand only for the unremarkable proposition that an expert may help a jury understand the *significance of facts already in evidence* – there, an IRS agent's explanation of why the mechanics of structured currency transfers through Western Union were consistent with money laundering. *Wilson*, 355 F.3d at 362; *Willey*, 57 F.3d at 1389. Neither case permits what the government proposes here: an expert opinion, drawn from an aggregate statistical pattern, about what a particular defendant was thinking on a particular day. To the contrary, *Willey* draws precisely the line Dr. Bynon urges. There, the court took care to note that the IRS agent testified only that the transactions "concealed" the source of the funds – "*not* that they were 'designed to conceal,' which is the ultimate issue" – and distinguished *United States v. Benson* because the agent there had "testified as to the defendant's state of mind, which is prohibited by Rule 704." *Willey*, 57 F.3d at 1389 & n.29. Dr.

Lynch's opinion that Dr. Bynon's entries "suggest[] decision making independent of consideration of patient disease status" is exactly the state-of-mind inference *Willey* and Rule 704(b) forbid.

### C. A lawyer's disclaimer cannot cure a report's content.

The government's answer to both motions is that it will simply not ask the offending questions. But these opinions are not stray remarks awaiting a strategy choice. They are the stated conclusions of written experts – reports the government designated, has never amended, and continues to defend. An expert whose written analysis rests on the premise that the defendant acted deliberately and insincerely, or made decisions untethered from his patients' conditions, cannot testify consistently with that analysis without conveying the premise. Neither response explains how its expert would do so, because neither can.

## V.
## Reserving Both Experts for "Rebuttal" Compounds the Problem Rather Than Curing It

The government's principal answer to nearly every argument in both motions is that its experts are now rebuttal witnesses whose testimony "will depend on Bynon's case-in-chief." ECF No. 118 at 6; *accord* ECF No. 116 at 9. That reservation makes matters worse, for three reasons.

*First*, Rule 704(b) contains no rebuttal exception. An expert may not opine on a criminal defendant's mental state on direct, on cross, or in rebuttal. Neither does Rule 702 relax in rebuttal. Neither does this Court's Rule 403 ruling on patient outcomes, which applies "unless and until a party opens the door to such evidence." *Bynon*, 2026 WL 1595296, at *12. Dr. Bynon does not intend to open that door. The categories of opinion at issue are thus inadmissible whether offered in the case-in-chief or in rebuttal.

*Second*, rebuttal is not a mechanism for admitting evidence that is inadmissible in the case-in-chief. If Dr. Cooper's causation opinions lack methodology, they lack it in rebuttal. If Dr.

Lynch may not recite the MPSC's findings under Rule 703 and the Confrontation Clause, he may not recite them in rebuttal. Dr. Bynon's decision to mount a defense does not convert inadmissible expert testimony into admissible expert testimony. This Court has recognized as much in denying the government's "motion to clarify": the government "cannot use rebuttal 'as a continuation of the case-in-chief,'" and "cannot delay calling Dr. Lynch and Dr. Cooper until rebuttal to testify as to issues that are clearly central to, and likely to be raised in, the government's case in chief." Order, ECF No. 124, at 1–2 (Aug. 10, 2026) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)).

*Third*, the government bears the burden of establishing the admissibility of its experts' opinions, and it must do so at the hearing the Court has set. Dr. Bynon made this precise point in opposing the government's request to delay its *Daubert* responses until designation of the defense's expert reports. *See* ECF No. 111, at 6 (characterizing the government's request for delay as an attempt to improperly shift its burden of proof to the defense). The question here is not the timing of the inquiry, which the Court has resolved, but whether these opinions may be admitted at all. For the reasons stated, they may not — in the case-in-chief or in rebuttal.

The government's move — advancing its experts' opinions, disclaiming them when challenged, and reserving them for a rebuttal theory it has not stated — is itself a ground for exclusion. This Court has already cautioned that the government "cannot use rebuttal 'as a continuation of the case-in-chief.'" Order, ECF No. 124, at 2 (quoting *Cates*, 928 F.2d at 685). Other courts confronting the same tactic have excluded the testimony outright. In *United States v. Schiff*, 538 F. Supp. 2d 818 (D.N.J. 2008), the court held that it "cannot fulfill its gatekeeping function in evaluating the proposed expert without knowledge before the *Daubert* hearing of the [g]overnment's *theory* for the admissibility of the testimony," and that after "[m]any months and

reams of paper … devoted to the *Daubert* process," it "is a violation of the procedural rules set forth in the Federal Rules of Criminal Procedure, the FRE, and fundamental due process to toss out a new theory now." *Id.* at 841 (emphasis added). The court declared that it "will permit no further 'legal theory morphs' in this case," *id.* at 826, observing that "[t]here is just no excuse for waiting until the eve of trial … to launch a new theory," *id.* at 840. The reasoning applies with equal force in this case, where the government has not merely reserved a new theory but withdrawn its designated experts from its case-in-chief altogether. *See* Govt. Witness List, ECF No. 125 (listing both Dr. Cooper and Dr. Lynch as "rebuttal" witnesses, even after the Court issued its order denying the government's motion to clarify (ECF No. 124)).

## VI.
## The Government's Remaining Arguments Do Not Withstand Examination

### A. Rule 16 requires more than a list of record categories where the opinion is a negative finding.

The government's response does not defend the sufficiency of its expert notice on its own terms; it argues instead that Dr. Bynon's disclosure for Dr. Schold "offers the same level of specificity." ECF No. 116 at 10. That counter-accusation does not answer the objection. The deficiency in the government's notice—its failure to identify the records underlying each expert's opinions—is set out in the motion. *See* Mot. to Exclude Lynch, ECF No. 99 at 9; Mot. to Exclude Cooper, ECF No 103 at 13-15. The point the response newly raises fails for two reasons.

*First*, the disclosures are not comparable in kind. Dr. Schold's disclosure identifies a specific report by author and date, five specific SRTR Program-Specific Reports by release date, a specific database with the dates it was accessed, specific OPTN and HRSA policy materials by period, and enumerated peer-reviewed literature. Dr. Cooper's and Dr. Lynch's notices identify only categories of material – "Memorial Hermann medical records," "internal communications,"

"UNOS/OPTN records." *Second*, and more fundamentally, the two rest on different kinds of opinion. Dr. Cooper's central opinion is a *negative* finding – that the records contain no documented rationale, and that no clinical change warranted the adjustments. The reliability of a negative finding depends on the completeness of the review that produced it; an expert who reviewed only an unspecified subset can say only what he did not happen to find. A list of record categories cannot establish that completeness, and the government's own follow-up confirms the gap: when Dr. Bynon requested specificity (*see* ECF No. 103 at 4 & Exhibits B-D), the government's July 21 "Report of Interview" merely restated, at a higher level of abstraction, the same categories the reports already recited. Those are not comparable disclosure problems.[4]

**B. The negative-inference cases do not authorize an opinion about what a physician was thinking.**

The government cites two unpublished out-of-circuit district court decisions for the proposition that an expert may "draw negative inferences based on an absence of evidence." ECF No. 118 at 8 (citing *McLaughlin v. Tesla, Inc.*, No. 22-cv-07849-SVK, 2024 WL 4177945 (N.D. Cal. Sept. 11, 2024), and *Narsimhan v. Lowe's Home Ctrs., LLC*, No. 19 CV 1255, 2022 WL 580800 (N.D. Ill. Feb. 25, 2022)). Neither decision authorizes the inference the government seeks here, for three reasons.

*First*, both are civil tort cases. Rule 704(b) applies only "[i]n a criminal case," so neither court had any occasion to consider whether an expert may opine on a criminal defendant's mental state. Whatever those courts permitted about gaps in documentation, neither says anything about the rule that governs here.

[4] To date the government has not cured this deficiency. To the extent possible, we attempted to provide the same set of documents – produced to the defense by the government in a disorganized fashion and, in some cases, without bates labels – to Dr. Alexopoulos. We could not, therefore, rectify in our expert disclosure a problem which the government itself created.

*Second*, *McLaughlin* cuts against the government. The same court excluded, as unreliable under Rule 702, the human-factors expert's proposed opinions that the plaintiff "believed he had engaged autopilot" and that "that belief was reasonable," while permitting him to "restate any fact upon which he bases an opinion." 2024 WL 4177945, at *1. That is precisely the line Dr. Bynon asks this Court to draw: an expert may recite the record, but may not extrapolate from a pattern of conduct to what a person believed on a particular day.

*Third*, *Narsimhan* admitted the opinion precisely *because* the expert stopped short of the mind. The court emphasized that the defense expert "does not profess to 'read [the treating physician's] mind'" and "appropriately acknowledge[d] the limitations of his opinion," distinguishing competence to make a diagnosis from documentation of one. 2022 WL 580800, at *9. Dr. Cooper does the opposite. He does not confine himself to what the records show; he affirms what Dr. Bynon was and was not thinking – that the effort was not "sincere," that the conduct was "deliberate." Nothing in transplant medicine supplies a method for that inference, and Rule 704(b) forbids it however reliable the government might claim it to be.

**C. The 2012 waitlist evidence is inadmissible propensity evidence offered without notice.**

The government's Lynch response states that "[o]n April 3, 2012, Bynon made 57 modifications to the organ waitlist at MHHS using throttle criteria," and that "[t]he United States intends to elicit this testimony to demonstrate that his donor criteria manipulations constitute false statements, not 'an exercise of "medical judgment" immune from legal scrutiny.'" ECF No. 116 at 10–11. The indictment charges conduct occurring in 2023 and 2024. The government thus proposes to prove Dr. Bynon's intent in 2023 and 2024 with evidence of what he allegedly did more than eleven years earlier.

Rule 404(b)(1) forbids exactly that inference: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The government's stated purpose – to show that Dr. Bynon's 2023 adjustments were not medical judgment because he made similar entries in 2012 – is a chain of reasoning that runs from prior act, to character, to conduct on the charged occasions. That is the forbidden chain, whatever label the government attaches to it.

Even if the government could articulate a permissible purpose under Rule 404(b)(2), the evidence would fail the Fifth Circuit's two-step test. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) (extrinsic-act evidence must be relevant to an issue other than character, and its probative value must not be substantially outweighed by undue prejudice). Probative value depends on similarity and proximity, and eleven years is a very long time. The government offers nothing connecting the 2012 entries to the charged conduct beyond the fact that both involved donor criteria. Meanwhile the prejudice is obvious: the jury would hear that Dr. Bynon has been doing this for over a decade. The point is not merely remoteness. Evidence of Dr. Bynon's alleged use of internal holds before UNOS's April 2020 COVID-19 guidance is irrelevant to his state of mind during the charged period (2023–2024) and, in any event, inadmissible under Rule 403. The 2012 entries – made eight years before that guidance and eleven years before the charged conduct – are the most extreme example of the same improper propensity inference, offered to suggest that because Dr. Bynon used internal holds long ago, his charged conduct could not have had an appropriate medical basis.

The notice problem is independent and dispositive. Rule 404(b)(3) requires the prosecutor to "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial," to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the

evidence and the reasoning that supports the purpose," and to "do so in writing before trial." The government has never served a Rule 404(b) notice as to the 2012 entries. Rule 404(b)(3) exists precisely so that a defendant is not required to prepare, on the eve of trial, to defend conduct from another decade.

Furthermore, the 2012 evidence only compounds the Rule 704(b) problem. Dr. Lynch does not simply recite that 57 entries were made. He draws the inference that their "uniform application … to all listed patients regardless of clinical situation suggests that decision making independent of consideration of patient disease status." Report at 13. The 2012 data is the springboard for an opinion about how Dr. Bynon reasons—offered to prove how he reasoned in 2023. Rule 404(b) bars the evidence; Rule 704(b) bars the inference drawn from it; and Rule 403 bars both.

Finally, the government appears to believe that evidence of Dr. Bynon's use of internal holds before the COVID-19 pandemic began is relevant because Dr. Bynon has asserted that his internal holds charged in the indictment were "entirely consistent with the express guidance provided by UNOS during the COVID-19 pandemic" (in April 2020) – which recommended the use of internal holds to transplant professionals when their patients had contracted COVID. *See* Motion to Dismiss the Indictment (ECF No. 29), at 5. Dr. Bynon also has pointed out that UNOS's 2020 guidance was not rescinded until April 2026 and that HRSA, OPTN, and UNOS were well aware that transplant programs throughout the United States continued to use internal holds after the COVID-19 pandemic had ended in May 2023. ECF No. 29, at 8-9 & n.15.

The government's apparent premise for seeking to introduce evidence of Dr. Bynon's pre-COVID use of internal holds – i.e., that Dr. Bynon's defense at trial will be that he used internal holds in 2023 and 2024 *only* because he believed that he was permitted to do so by UNOS's 2020 guidance and, thus, evidence of his pre-COVID use of internal holds is relevant to rebut that

defense – is faulty. The theory of the defense at trial, as it relates to UNOS's guidance, will be that the practice of internal holds received the imprimatur of a leading national voice in the transplant community long before the time period charged in the indictment (2023-2024), as an alternative to a Status-7 inactivation. That is, evidence of UNOS's guidance – and evidence that OPTN and HRSA did not rescind that guidance until April 2026 – will be offered to prove that the practice of internal holds was not deemed inherently improper within the transplant community in 2023 and 2024. That evidence is relevant to both the "falsity" and "willfulness" elements of 18 U.S.C. § 1035(a)(2).

Dr. Bynon does not intend to offer any evidence or make any arguments at trial that he *began* internal holds *only after* UNOS's guidance and did not do internal holds before then. The defense at trial will focus only on Dr. Bynon's state of mind *during the time period charged in the indictment*. Whatever Dr. Bynon may have believed about the propriety of using internal holds before UNOS's April 2020 guidance is thus irrelevant.

Again, even assuming *arguendo* that evidence of Dr. Bynon's pre-COVID use of internal holds has any minimal relevance, admission of such evidence at trial would violate Federal Rule of Evidence 403 because "its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time …" Fed. R. Evid. 403. This indictment is limited to allegations in the post-COVID period. Its evidence of Dr. Bynon's use of internal holds should be so limited as well.

**D. Dr. Lynch's institutional position is not ordinary expert bias.**

The government responds that bias is "fodder for cross-examination," citing cases holding that an expert's compensation is a credibility matter. ECF No. 116 at 12. Those cases are inapposite. The objection to Dr. Lynch is not that he is paid.

Dr. Lynch is the Acting Director of the Division of Transplantation at HRSA—the federal agency within HHS that oversees OPTN and UNOS. His agency conducted the peer review of Dr. Bynon's program, forced the program's inactivation, and designated Memorial Hermann a "Member Not in Good Standing." Dr. Lynch then wrote a report, at the prosecution's request, that recites and adopts those very findings—findings reached in a proceeding he did not participate in, five months before he joined the agency. The reliability concern is not that he is paid. It is that his opinion validates his own agency's prior administrative conclusions, and that he adopted those conclusions without independent verification. That is a Rule 702(c)–(d) methodology problem and a Rule 703 problem, and it is not answered by the mundane observation that cross-examination exists.

The same is true of the "throttle criteria" terminology. HRSA—Dr. Lynch's own agency—has described this practice as "ineffective" listing or waitlist screening parameters. The term "throttle criteria" appears in no peer-reviewed literature and in no OPTN or HRSA policy document predating Dr. Lynch's report to the prosecution. Coining pejorative terminology for litigation is not a matter of weight.

## VII.
## Conclusion

The government has now told this Court three different things about what its experts would do: that they would prove each patient was "capable of withstanding the transplant procedure, surviving, and thriving" (Tr. at 7); then that it was "not sure" it could offer an expert who would say so (*id.* at 11); and that, finally, neither expert will appear in its case-in-chief but perhaps in rebuttal (ECF No. 116 at 1; ECF No. 118 at 1). Each position arrived immediately after the prior one was shown to be untenable.

Dr. Bynon is entitled to know, before trial begins, what the government's experts may and may not say. The Court has set these questions for a hearing on August 18 before a jury is empaneled, *see* Order, ECF No. 124 (Aug. 10, 2026), and Dr. Bynon respectfully requests that the Court exclude the testimony of Dr. Lynch and Dr. Cooper, or in the alternative enter an order specifying the categories of opinion neither may offer in any phase of trial.[5] The government's obligation is not to preserve maximum tactical flexibility; it is to see "that justice [is] done." *Berger*, 295 U.S. at 88.

Respectfully submitted,

/s/ *Samy Khalil*
Samy Khalil
Texas Bar No. 24038997
John Kinchen
Texas Bar No. 00791027
**KHALIL KINCHEN LLP**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
samy@khalilkinchen.com
john@khalilkinchen.com

Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, Maryland 20878
202.975.9105
brentevannewton@gmail.com

*Attorneys for Dr. Steve Bynon*

[5] In the interest of efficiency, and to the extent possible, it may be helpful to the parties if the Court resolves at least some of these issues before the August 18 motions hearing.

**CERTIFICATE OF SERVICE**

On August 12, 2026, I electronically filed this reply with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Samy Khalil*
Samy Khalil