**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIM. NO. H-26-023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**UNITED STATES' MOTION TO EXCLUDE**
**EXPERT TESTIMONY AND/OR MOTION FOR A *DAUBERT* HEARING**

The United States, by and through its undersigned counsel, respectfully moves to exclude the defendant's proposed experts Dr. Sophoclis Alexopoulos and Dr. Jesse Schold, from testifying at trial. Alternatively, the United States requests a *Daubert* hearing.

## I. Factual Background

Bynon served as the Director of Abdominal Organ Transplantation and Surgical Director for Liver Transplantation of Memorial Herman Health System ("MHHS") at the Texas Medical Center in Houston, Texas from 2011 to 2024. The Multidisciplinary Review Board ("MRB") at MHHS determined a patient's eligibility for liver transplantation. This board consisted of hematologists, surgeons (at times, including Bynon), nurses, transplant coordinators,[1] social workers, dietitians, and other health care professionals all working at the MHHS Transplant Program. The MRB reviewed the medical files belonging to the five patients identified in the indictment, concluding that liver transplantation was safe and appropriate for each patient.

A transplant coordinator placed the patients on the national organ waitlist, entering their biographical information on a computer program maintained for this very purpose. The

[1] A transplant coordinator, often a registered nurse, is a health care professional who guides patients through every phase of the organ transplant process. Commonly, they serve as the patient's main point of contact, through initial evaluation, and waitlist logistics, to post-surgery follow-up.

coordinators also identified the age and weight of potential donors. Shortly after the patients' placement on the waitlist, Bynon accessed their accounts and manipulated their donor criteria. According to Bynon, "he set the donor age and weight criteria (*e.g.*, at the weight and age of a small child) so as to preclude organ offers for an adult transplant patient." (Docket No. 29 at p. 4.) These parameters were false. He changed the criteria in secret, without informing the patients, their coordinator, the MRB, or any other member of the transplant team. Modifications to the donor criteria did not appear on the patient's medical chart, preventing peer review and withholding critical information from transplant candidates. Moreover, Bynon made no record in any patient file stating the reason why he altered donor criteria at the time he made the false statements.

On January 14, 2026, a grand jury returned an indictment charging Bynon with five counts of making a false statement relating to health care matters in violation of 18 U.S.C. § 1035. (Docket No. 1.) Bynon subsequently entered a plea of not guilty. (Docket No. 8.)

The United States received Bynon's expert disclosures on August 4, 2026 at 11:43 PM. The Court subsequently informed the parties that their respective experts may appear by videoconference at the August 18, 2026 *Daubert* hearing. Trial is set to commence on August 24, 2026. (Docket No. 73.)

## II. Legal Standard

Because of the powerful and potentially misleading effect of expert evidence, a district court evaluating proffered testimony under Rule 702 plays a critical gatekeeping role. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-95 (1993); *United States v. Valencia*, 600 F.3d 389, 423-24 (5th Cir. 2010); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (stressing that the gatekeeping function "cannot be overstated" and is "especially significant" given that "no other kind of witness is free to opine about a complicated matter without

any firsthand knowledge of the facts in the case"). That role is critical for *all* types of expert testimony, not just scientific testimony. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

Accordingly, the Court has discretion to hold a preliminary hearing to determine whether a noticed expert has sufficient expertise to testify. *United States v. Norris*, 217 F.3d 262, 269 (5th Cir. 2000). A witness may be qualified by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. "The witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Bourgeois,* 950 F.2d 990, 987 (5th Cir. 1992) (internal quotation omitted).

Further, Rule 702 requires the Court to confirm that testimony resting on specialized knowledge is sufficiently reliable to assist the factfinder. *Daubert*, 509 U.S. at 592. The Court must determine whether the proffered testimony is the product of reliable principles and methods, and that the testimony is otherwise relevant—that is, the reasoning or methodology is reliably applied to the facts in issue. *Id.* at 592–93. The proponent of expert testimony—here, the defendant—has the burden of showing that the testimony is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc).

A qualified expert may not opine on a criminal defendant's mental state. *See* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or a defense. Those matters are for the trier of fact alone."). This rule prohibits not only an express opinion regarding the defendant's mental state, but also testimony that is the "functional equivalent" of an express opinion as to mental state. *See e.g.*, *United States v. Fisher*, 236 F. App'x

54, 57 (5th Cir. June 6, 2007) (finding that the court erred in admitting testimony about the defendant's intent to commit tax fraud); *United States v. Herzog*, 632 F. 2d 469, 473 (5th Cir. 1980) (upholding exclusion of expert testimony regarding the complexity of tax laws and other individuals' comprehension of these laws). Said differently, expert testimony is improper if it amounts to an attempt by a defendant to "testify by proxy, that is, to elicit the aid of a so-called expert to expound on [the defendant]'s mental state and thereby avoid taking the witness stand and undergoing rigorous cross-examination." *United States v. Tucker*, 345 F.3d 320, 330 (5th Cir. 2003).

While Rule of 704 allows experts to opine on ultimate issues of fact, it does not allow experts "to tell the jury what result to reach." *Owen v. Kerr–McGee Corp*., 698 F.2d 236, 240 (5th Cir. 1983). "Nor is the rule intended to allow a witness to give legal conclusions." *Id.* at 239-40. Indeed, "[C]ourts must remain vigilant against the admission of legal conclusions, [and] an expert witness may not substitute for the court in charging the jury regarding the applicable law." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).

Finally, like all evidence, expert testimony is subject to Rule 403. If the probative value of the testimony is substantially outweighed by its potential to confuse or mislead the jury, "or if the expert testimony is cumulative or needlessly time consuming," the testimony should be excluded. *Frazier*, 387 F.3d at 1263. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.*

## III. Discussion

### A. Dr. Jesse Schold

The United States moves to exclude Dr. Schold's expert testimony because his opinions are not based on sufficient facts or data. For instance, he opines that a "similar [to program-level

offer filters] mode of restricting offers to candidates based on select criteria." This description has no basis in fact because there is no system of patient-level offer filters in OPTN systems. *See* Exhibit A, Rebuttal Expert Report by Dr. Raymond J. Lynch, p. 6. Moreover, Dr. Schold's opinion that donor acceptance criteria "have no external referent against which they can be verified" is not based on sufficient facts or data. He fails to cite OPTN benchmarks for inputting donor criteria, neglecting to cite relevant policies and procedures. Namely, UNet instructs program users that donor weight must comply with the following parameters:

> Minimum acceptable donor weight . . . The recommended minimum acceptable donor weight is no more than 30% below the candidate's listing weight.
>
> Maximum acceptable donor weight . . . The recommended maximum donor weight must be more than the candidate's listing weight, is no more than 100 percent (100%) greater than the candidate's listing weight and should be greater than the minimum acceptable donor weight.

Furthermore, his failure to cite applicable federal regulations and OPTN policy requiring the entry of accurate information is fatal to Dr. Schold's proposed expert testimony. *See* Exhibit A, at p. 7 (OPTN Policy 18.1.A: Accurate Submission of Data); 42 C.F.R. § 121.11. His opinion will be of no assistance to the jury because he fails to cite relevant facts and data.

**B. Dr. Sophoclis Alexopoulos**

Bynon designated Dr. Alexopoulos as an expert to offer testimony concerning medical condition and suitability for liver transplantation of the five victims named in the indictment. The literature by Dr. Alexopoulos does not, however, establish the conclusion for which it is offered. In his report, Dr. Alexopoulos states:

> It is my opinion that as of 14:38 on 12/24/23, (1) OHF was not a suitable candidate to proceed to liver transplantation, and (2) it would have been reasonable, clinically justified and within the standard of care to preclude donor offers on that date, due to her ongoing multi-organ failure including that of the respiratory system requiring mechanical ventilation, cardiovascular system requiring vasoactive medication support, renal failure requiring CRRT, and hematologic system requiring ongoing blood transfusion in the setting of refractory shock.

Report by Dr. Sophoclis Alexopoulos, pg. 3 (Aug. 4, 2026). Dr. Alexopoulos also emphasizes that patient OHF's lactate "continued to rise and by 00:17 on 12/24/23 had reached 12.8 mmol/L consistent with progressive shock." To support his opinion, Dr. Alexopoulos cites Weiss et al., *When Is a Critically Ill Cirrhotic Patient Too Sick to Transplant? Development of Consensus Criteria by a Multidisciplinary Panel of 35 International Experts*, Transplantation 105:561–568 (2021) ("Weiss"). According to Dr. Alexopoulos, Weiss identifies a lactate greater than 9 mmol/L, respiratory failure, escalating vasopressor requirement, and the number of concurrently failing organ systems as factors bearing upon transplantation.

Weiss is not a clinical-validation study establishing that patients with lactate concentrations above 9 mmol/L should not receive donor offers. It is a consensus publication arising from a modified Delphi process involving 35 international experts. Dr. Alexopoulos does not identify a reliable methodology connecting the medical literature he cites to his retrospective conclusion that OHF was not merely critically ill or temporarily unsuitable to undergo transplantation, but that it was "reasonable, clinically justified and within the standard of care to preclude donor offers" to her on December 24, 2023. His principal authority is a modified-Delphi consensus publication involving 35 physicians. That publication identifies clinical considerations relevant to whether transplantation should be delayed or denied in critically ill cirrhotic patients, but it does not validate the proposition that a prior lactate value above 9 mmol/L, or the presence of multiorgan failure generally, establishes that donor offers should be precluded.

The additional medical records allegedly supporting the opinion are not identified with sufficient specificity to permit meaningful evaluation. On page five of his report, Dr. Alexopoulos additionally refers generally to physical-therapy and occupational-therapy notes at the time of the hospital discharge as support for his conclusion that precluding transplantation or donor offers was

reasonable. Yet the disclosure does not identify which physical therapy or occupational therapy records he relied upon. It sets forth no dates, authors, quotations, page references, bates numbers, clinical measurements, or explanation identifying the particular physical therapy or occupational therapy findings that supposedly bear upon transplant candidacy.

This omission is not merely a matter for cross-examination. It prevents the United States and the Court from determining what facts or data supposedly support the expert's opinion, whether those facts actually say what the expert claims, whether experts in transplantation reasonably rely on such information for the proposition offered, and whether the expert reliably applied his methodology to the patient's actual clinical condition. It also fails to provide the "bases and reasons" required by Rule 16(b)(1)(C). Because the defense bears the burden of establishing that Dr. Alexopoulos's proposed testimony satisfies Rule 702, the Court should exclude the challenged opinions.

## CONCLUSON

For the reasons set forth above, the United States respectfully moves to exclude the defendant's proposed experts Dr. Sophoclis Alexopoulos and Dr. Jesse Schold, from testifying at trial. Alternatively, the United States requests a *Daubert* on August 18th, before trial commences,

as agreed upon by all parties, pursuant to the Court's order. (Docket No 124.)

Respectfully Submitted,

AARON F. REITZ

United States Attorney

Southern District of Texas

By: */s/ Amanda Alum*
Amanda Alum
Suzanne Elmilady
Sherin Daniel
Anthony Franklin
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been delivered on counsel of record via ECF upon filing.

*/s/ Amanda Alum*
Amanda Alum
Assistant United States Attorney