**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:26-cr-00023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

# DEFENDANT'S MOTION TO EXCLUDE UNDISCLOSED EXPERT TESTIMONY REGARDING MEDICAL SUITABLITY OF PATIENTS FOR LIVER TRANSPLANTATION AND OF SHAUNA SCHWARM

Dr. Steve Bynon, through his counsel, respectfully moves this Court to exclude (1) any testimony from a Memorial Hermann or UT Health physician—including any member of the Medical Review Board—or from the government's case agent offering an opinion that any of the five patients was medically suitable or eligible for transplantation, whether at the time of the board's approval or on the date Dr. Bynon adjusted that patient's donor-acceptance criteria; and (2) any expert testimony from Shauna Schwarm, whom the government designated as an expert but for whom it has provided none of the disclosures Federal Rule of Criminal Procedure 16(a)(1)(G) requires. Those are expert opinions. They were never disclosed, and the deadline for designating experts passed six weeks ago. In support, Dr. Bynon would show the following:

## I. Introduction

The government designated three expert witnesses in this case: Dr. Matthew Cooper, Dr. Raymond Lynch, and Shauna Schwarm. ECF No. 89. On August 10, 2026, it filed a witness list that places all three in a single category – "POTENTIAL REBUTTAL WITNESS." ECF No. 125 at 2 (Nos. 10, 19, 20). Its case-in-chief list, Nos. 1 through 8, contains four Memorial Hermann

and UT Health transplant physicians, one transplant coordinator, two Medicare-enrollment custodians, and the case agent. *Id.* at 1. It contains no designated expert of any kind.

That structure is consistent with what the government has told the Court. It "no longer anticipates needing to call Dr. Cooper as an expert witness during its case-in-chief," ECF No. 118 at 1, and it "does not intend to call Dr. Lynch as an expert witness during its case-in-chief," ECF No. 116 at 5. As to Ms. Schwarm, it withheld her Rule 16 disclosures on the theory that her testimony "is factual such that it should be received as lay opinion pursuant to FRE 701." ECF No. 89 at 2. The government, therefore, proposes to try its entire case-in-chief without a single disclosed expert.

Relabeling the three experts "rebuttal" witnesses changes nothing. Rule 16(a)(1)(G)(i) requires the government, at the defendant's request, to disclose the information specified in (iii) for any Rule 702, 703, or 705 testimony it intends to use "during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C)." Fed. R. Crim. P. 16(a)(1)(G)(i) (emphasis added). The required contents are the same either way: "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal." *Id.* 16(a)(1)(G)(iii).

None of this would be remarkable if the government intended to prove a case that needs no expert. This is not that case. The government has told this Court precisely what it intends to prove and precisely what kind of witness it takes to prove it. Responding to Dr. Bynon's *Daubert* motions, it agreed that a "qualified transplant surgeon" may opine "about a patient's clinical condition on a given date and whether such patient was medically suitable for organ-transplantation surgery," and then wrote: "This is precisely what the United States intends to do

at trial: Elicit ***expert*** testimony that [Dr.] Bynon prevented eligible candidates from receiving organ offers." ECF No. 118 at 7 (emphasis added).

The superseding indictment ("SSI") returned on August 12, 2026, pleads the same medical conclusions as the circumstances from which the jury is to infer criminal intent. The grand jury alleged that the criteria changes "occurred after the transplant committee/board approval for a liver transplant"; that "[t]here was no documented change in the patient's condition supporting the newly restrictive criteria"; and that Dr. Bynon's actions "did not follow institutional custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician." SSI ¶¶ 20–21. Whether a patient's condition changed, and whether a transplant surgeon's judgment departed from accepted clinical practice, are not matters an ordinary person can assess. They are the province of Rule 702.

So the government has pleaded and previewed a case that turns on transplant-medicine opinion, while removing every designated expert from its case-in-chief. The gap has to be filled by someone. On the present record the candidates are the four Memorial Hermann and UT Health physicians on the case-in-chief list – Dr. Merwat, Dr. Fair, Dr. Kulkarni, and Dr. Villani – and the government's case agent, who is a registered nurse. None of the five has been designated as an expert, and for none of them has any Rule 16 disclosure been made. ECF No. 125 at 1.

The rebuttal list confirms the concern rather than answering it. Beyond the three designated experts, it adds two more physicians who have never been designated and for whom no disclosure exists: Dr. Malay Shah, an abdominal transplant surgeon at the University of Kentucky College of Medicine, and Dr. Maria Patarroyo-Aponte, a transplant cardiologist at Memorial Hermann. ECF No. 125 at 2 (Nos. 9, 11). This Court has already held that the government "cannot use rebuttal 'as a continuation of the case-in-chief,'" and "cannot delay calling Dr. Lynch and Dr.

Cooper until rebuttal to testify as to issues that are clearly central to, and likely to be raised in, the government's case in chief." ECF No. 124 at 1-2 (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)).

Rule 16(a)(1)(G) requires the government to provide for every witness it will call under Rules 702, 703, or 705 a complete statement of all the witness's opinions, the bases and reasons for them, the witness's qualifications, and a list of the witness's expert testimony from the preceding four years. This Court's Second Amended Scheduling Order required the government to "designate its experts" by July 3, 2026, and its rebuttal experts by July 31, 2026.[1] ECF No. 73 ¶¶ 1, 3. Trial begins August 24. *Id.* ¶ 5. The government has complied as to neither category of testimony it now appears poised to offer.

## II.
## Background

On July 2, 2026, the government filed its Notice of Intent to Present Expert Testimony, designating Dr. Matthew Cooper, Dr. Raymond Lynch, and Shauna Schwarm. ECF No. 89. As to Ms. Schwarm, the government supplied a CV and nothing else, explaining that it gave notice only "[o]ut of an abundance of caution" because it "believes that Ms. Schwarm's anticipated testimony described herein is factual such that it should be received as lay opinion pursuant to FRE 701." *Id.* at 2.

The notice then described Ms. Schwarm's anticipated testimony across five pages. *Id.* at 7-11. She would "explain how Medicare works, Medicare's coverage for organ transplant, the representations that providers, including physicians, must make to enroll with Medicare, and the claims submitted by the Defendant to Medicare." *Id.* at 7. She would testify to "the claims

[1] To date the government has submitted no rebuttal report for Dr. Cooper, and it submitted an untimely rebuttal report for Dr. Lynch. *See* ECF No. 135, at 3 n.2.

adjudication process, including the time in which Medicare processes claims and the extent to which claims are, or are not, reviewed by Medicare," and that "it is a physical impossibility for every claim to be reviewed before it is paid." *Id.* at 10. She would explain the Medicare enrollment application and "the certification statements that the provider must agree to," including agreement "to abide by the Medicare laws, regulations, and program instructions, including the Federal Anti-Kickback Statute." *Id.* She would address "the Form 855s as well as other documentation submitted by Dr. Bynon, including representations contained within the forms as to providers' ownership, management, location(s)," and would explain "the representations that providers make regarding their ownership and management structure." *Id.* at 10-11. And she would testify that in submitting claims providers certify that "the services purportedly provided, as set forth in the claims, are medically necessary." *Id.* at 11.

According to the notice, Ms. Schwarm's "opinions will be based on her knowledge, training, skill, and experience working with the Medicare program, including its rules and regulations, as well as her review and analysis of documents and claims data." *Id.* at 8. The notice states that her testimony "may cover the following topics and include the following opinions." *Id*. It recites that she is employed by Qlarant Quality Solutions, supports the Southwest Unified Program Integrity Contractor, has worked for Medicare contractors "primarily in fraud investigations," "has overseen fraud investigations for Medicare contractors," and "has testified about Medicare and Medicare coverage in approximately nine federal criminal trials throughout Louisiana and Texas." *Id.* at 7-8.

As noted, the government has identified what it does intend to prove: "***expert*** testimony that Bynon prevented eligible candidates from receiving organ offers." ECF No. 118 at 7 (emphasis added). It grounded that eligibility in the Memorial Hermann Medical Review Board:

"A.P. was eligible to receive offers from adult donors, just as the MRB had determined the previous day." *Id.* at 2. The government describes the MRB as a body "consist[ing] of hematologists, surgeons (at times, including Bynon), nurses, transplant coordinators, social workers, dietitians, and other health care professionals." *Id.* at 1 n.1.

The government has never designated any Memorial Hermann or UT Health physician as an expert, and has never provided a Rule 16(a)(1)(G) disclosure for any such witness.

## III.
## Rule 701 Does Not Permit a Fact Witness to Offer an Opinion That Rests on Specialized Knowledge

Rule 701 permits a witness who is not testifying as an expert to offer opinion testimony only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added). Subsection (c) was added in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note to 2000 amendments.

The Fifth Circuit applies that limit strictly. "[A]ny part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008). The distinction is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." *Id.* (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendments); *accord United States v. Ebron*, 683 F.3d 105, 136–37 (5th Cir. 2012). Accordingly, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and

could be reached by any ordinary person." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996). The inquiry "turn[s] on whether the testimony falls within the realm of knowledge of the average lay person." *United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009).

That a witness acquired her knowledge on the job does not convert expert opinion into lay opinion. The "mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246–47 (9th Cir. 1997). In other words, "there is no 'on-the-job' exception to Rule 702." *United States v. Holmes*, 163 F.4th 547, 560 (9th Cir. 2025) (quoting *Figueroa-Lopez*, 125 F.3d at 1246 and citing *id.* at 1247).

## IV.
## Any Opinion That a Patient Was Medically Suitable or Eligible for Transplantation Is Expert Testimony That Was Never Disclosed

### A. Offered to prove medical eligibility, the Medical Review Board's approval is expert opinion, not a neutral administrative fact.

A decision to approve a patient for placement on a transplant waiting list is not an administrative formality. It is the output of a clinical evaluation in which physicians apply specialized medical knowledge – diagnosis, disease severity, organ function, comorbidities, contraindications for transplant, compatibility, and OPTN eligibility criteria – to conclude that the patient is an appropriate transplant candidate. That is a conclusion reached by "a process of reasoning which can be mastered only by specialists in the field." *Yanez Sosa*, 513 F.3d at 200. It is squarely governed by Rule 702, not Rule 701. *See* Fed. R. Evid. 701(c).

In the abstract, the rules distinguish between the fact that an event occurred and the specialized reasoning that produced it. That distinction offers the government no refuge here, because it has elected to use the approval for the one impermissible purpose that erases the line: to prove that these patients were medically eligible for transplantation on the day of Dr. Bynon's

criteria adjustments. The government's own words are unambiguous. It "intends … to … [e]licit ***expert*** testimony that Bynon prevented eligible candidates from receiving organ offers," ECF No. 118 at 7, and it ties that eligibility directly to the MRB: "A.P. was ***eligible*** to receive offers from adult donors, ***just as the MRB had determined the previous day***," *Id.* at 2 (emphasis added). Offered for that purpose, "the MRB approved this patient" is not a historical fact a percipient witness may relate under Rule 602. It is the vehicle for the board's embedded medical conclusion, and the jury will understand it as exactly that – validation by qualified specialists that the patient was medically suitable.

The Fifth Circuit has condemned this move in unsparing terms. In *In re Taxotere (Docetaxel) Products Liability Litigation*, the court held that a party's "maneuvers in cloaking [a physician's] quasi-expert testimony as 'lay witness' opinion testimony under Federal Rule of Evidence 701, and then using [an expert] to repeat it as expert analysis, effected a concerning end run around Rule 702." 26 F.4th 256, 259–60 (5th Cir. 2022). Because the strategy "allowed [the proponent] to shoehorn inadmissible opinion testimony into evidence – and then emphasize those 'expert' conclusions in closing arguments to the jury – it significantly prejudiced" the opposing party. The court reversed and remanded for a new trial. *Id.* at 260. The proponent's "stratagem of skating the line between Rules 701 and 702," the court explained, "reflects a calculated and troubling end-run around Rule 702 and *Daubert*. These evidentiary gates exist to keep out error that may impermissibly affect the jury, and the district court should not have left the gate ajar here." *Id.* at 264 (citation omitted). In substance, the proponent had "effectively smuggled inadmissible opinion testimony past the expert-disclosure and expert-discovery obligations imposed by the discovery and evidentiary rules by offering [the physician] as a lay witness." *Id.* at 267.

That is precisely what the government proposes here: to place before the jury the MRB's expert medical conclusion that these patients were suitable transplant candidates, without designating a single physician as an expert or disclosing the bases for that conclusion. The prejudice is acute. Without the Rule 16 disclosures, Dr. Bynon cannot meaningfully cross-examine these physicians on the clinical criteria they applied, the reliability of their methodology, or the alternative medical conclusions the same records would support – the very protections the expert-disclosure requirements are designed to secure.

The composition of the MRB only aggravates the problem. The government describes the MRB as including "nurses, transplant coordinators, social workers, dietitians, and other health care professionals" alongside physicians. ECF No. 118 at 1 n.1. A collective vote by a mixed body is not any single witness's medical opinion. The non-physician members could not give a transplant-suitability opinion at all.

**B. The bar applies to the Medical Review Board's approval date as well as to the date of the criteria change.**

Dr. Bynon does not ask the Court to keep from the jury the fact that each patient was placed on the waiting list. That a patient was listed on a date certain is a historical event, provable from the UNet registration records and by any percipient witness who took part in the listing. What the government may *not* put before the jury is the *medical judgment* behind that event without expert testimony – that the board found the patient medically suitable for transplant, that he met the clinical criteria for transplantation, that he was an appropriate candidate, or the clinical reasons the board reached that view. Those are expert opinions on the approval date, and none of them has been disclosed.

The same is true, and more obviously so, of suitability on the operative date. The government must prove falsity on the date and time Dr. Bynon entered the criteria adjustments.

Bridging the interval – testifying that a patient *remained* suitable, or that nothing in the patient's condition changed between the approval and the later adjustment – is not a report of what the board decided. It is a new, retrospective, day-specific medical assessment, formed by applying general transplant-medicine expertise to a later record in anticipation of litigation.

In other words, a treating physician "may not hypothesize, because that 'crosses the line from lay to expert testimony, and … must comply with the requirements of Rule 702 and the strictures of *Daubert*.'" *United States v. Betro*, 115 F.4th 429, 451 (6th Cir. 2024) (quoting *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317–18 (11th Cir. 2011)); *Collett v. Weyerhaeuser Company*, 512 F.Supp.3d 665, 672 (E.D. La. 2021) ("a treating physician . . . must meet the standards of Federal Rule 702 and *Daubert*.") Asking an MRB member whether a patient was still an appropriate candidate days, weeks, or months after the vote asks him to hypothesize about a day the board never considered.

The superseding indictment makes this testimony indispensable to the government's case, and therefore makes its absence from the Rule 16 disclosures fatal. Paragraph 20 alleges that "[t]here was no documented change in the patient's condition supporting the newly restrictive criteria." SSI ¶ 20. Whether a patient's clinical condition changed between two dates, and whether any such change would support restricting donor criteria, is a quintessential medical question. The government cannot plead a medical conclusion as the centerpiece of its willfulness theory and then prove it through witnesses it never designated (and whose opinions Dr. Bynon's medical expert has never had an opportunity to rebut).

The temporal gap between listing and criteria-change varies across the counts. For Patient O.F., the superseding indictment alleges that the criteria were entered "[l]ess than one day" after activation. *Id.* ¶ 19. For others the interval is longer. But the length of the interval goes only to

the weight of the government's inference; it does not change the character of the testimony. Whether the gap is a day or six months, an opinion that a patient was medically suitable on the date the criteria were changed by Dr. Bynon is an expert opinion, and it required designation and disclosure.

### C. Paragraph 21's standard-of-care allegation is expert opinion that no designated witness can supply.

The SSI also alleges that Dr. Bynon's actions "did not follow institutional custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician," and that any discretion the governing policies allowed "did not authorize the physician to use donor-acceptance criteria as an undisclosed means of nullifying a transplant decision already reached." SSI ¶ 21.

What a "similarly situated transplant physician" may properly do is the classic subject of expert testimony. It is not within "the realm of knowledge of the average lay person." *Caldwell*, 586 F.3d at 348. The government designated two experts who might have offered such an opinion and has now withdrawn both from its case-in-chief. ECF No. 118 at 1; ECF No. 116 at 5. It may not substitute undesignated Memorial Hermann or UT Health physicians to say the same thing under a "fact witness" label.

### D. No physician may testify to what Dr. Bynon was thinking.

Finally, to the extent any Memorial Hermann or UT Health physician would testify not merely that a patient remained suitable, but that Dr. Bynon adjusted the criteria for reasons unrelated to the patient's condition – that he was not, in fact, exercising clinical judgment – that testimony opines on what Dr. Bynon considered and why. A board member may describe what he personally observed and decided. He may not testify to what was, or was not, in Dr. Bynon's mind when Dr. Bynon made an entry the witness did not make and did not see.

## E. The Board approvals should be excluded under Rule 403.

Dr. Bynon does not seek to exclude fact testimony that a patient was placed on the waiting list, when that occurred, or who entered the listing. He seeks to prevent the government from converting that fact into an undisclosed expert opinion on medical suitability—whether as of the board's approval or as of the criteria change. If the Court permits the fact of listing to come in, it should preclude any suggestion that the listing establishes the patient's medical condition, on that date or any later one. Offered for that purpose the approvals are, at best, weakly probative, and they invite the jury to equate an administrative vote with a medical fact. That risk of confusing the issues and misleading the jury is significant, and it substantially outweighs whatever limited probative value the approvals carry for that purpose. Fed. R. Evid. 403.

## F. The same limits apply to the government's case agent.

The same principles bar the same testimony from a different direction. The government's case agent, FBI Special Agent Cooper Ferreira, is a former registered nurse. He has not been designated as an expert and no disclosure under Rule 16 has been made for him.

## V.
## Ms. Schwarm's Anticipated Testimony Is Expert Testimony Under Rule 702 and Must Be Excluded for Lack of the Required Rule 16 Disclosures

After this motion was prepared, and in response to a conferral e-mail sent on August 13, 2026, counsel for the government advised: "We are not using Schwarm." Dr. Bynon accepts that representation, which resolves this request in substance. He asks the Court to rule nonetheless, because the representation has not been reflected on the docket. Ms. Schwarm remains on the government's witness list, filed August 10, 2026. ECF No. 125, at 2 (listing "Shawna Schwarm, Medicare Representative"). No amended witness list has been filed. And that list reserves the government's right to "amend, modify, supplement, or otherwise revise [it] at any time prior to or

during trial," including on the basis of "the anticipated or actual testimony of defense witnesses or experts" and "impeachment or rebuttal needs arising during trial," and to "call any witness necessary for rebuttal, impeachment, authentication, or foundational purposes, whether or not the witness is specifically identified on this list." *Id.* at 3. An order excluding Ms. Schwarm's undisclosed opinion testimony would therefore spare the Court and the parties a dispute during trial, and Dr. Bynon respectfully requests one. In addition, when asked on August 13 who will replace Ms. Schwarm, the government declined to respond.

**A. The testimony the government describes is specialized-knowledge testimony governed by Rule 702, not lay opinion under Rule 701.**

Courts have applied the principles set out in Part III to Medicare witnesses indistinguishable from Ms. Schwarm. In *United States v. White*, the Sixth Circuit held that Medicare fiscal intermediary witnesses could not testify as lay witnesses, reasoning that "[t]he Medicare program operates within a complex and intricate regulatory scheme and we cannot say that the average lay person, including any Medicare beneficiary, commands a working knowledge of Medicare reimbursement procedures." 492 F.3d 380, 403 (6th Cir. 2007). The court concluded that "the district court erred in permitting the Fiscal Intermediary witnesses to effectively testify as experts without first being qualified." *Id.* at 404. The Fifth Circuit has described *White* as holding "that the Government should have qualified the witnesses as experts because their knowledge of the Medicare system far exceeded the average lay person." *Caldwell*, 586 F.3d at 348.

Courts in the Southern District of Texas have similarly held that testimony regarding "the workings of the Medicare systems" is appropriately expert testimony "because the complexity of the regulations takes them beyond the ordinary understanding of jurors." *United States ex. rel Ruscher v. Omnicare, Inc.*, No. 4:08-cv-3396, 2015 WL 5178074, at *9 (S.D. Tex. Sept. 3, 2015)

(citing *United States v. Abdallah*, 629 F.Supp.2d 699, 750 (S.D. Tex. 2009) (expert testimony regarding the Medicare payment system can help the jury understand the rules and regulations under which claims are submitted)).

Explaining Medicare's statutory and regulatory coverage framework for organ transplantation, the enrollment and certification obligations imposed on providers, the claims-adjudication process, and the meaning and legal effect of the Form 855 certifications is not within the knowledge of any ordinary person. The government all but concedes the point: it describes Ms. Schwarm's testimony as resting on "her knowledge, training, skill, and experience working with the Medicare program, including its rules and regulations," on "a decade of experience working with Medicare contractors," and on "her review and analysis of documents and claims data," and it calls the product of that experience her "opinions." ECF No. 89 at 8. A witness whose professional role is supporting "federal law enforcement agencies" for a Unified Program Integrity Contractor, and who has testified about Medicare in some nine federal criminal trials, *Id.* at 7-8, is not a percipient observer of anything in this case.

**B. The government told this Court that Ms. Schwarm was not an expert and would offer no opinion.**

At the June 8 scheduling conference, the Court asked how many experts the government would call. Counsel answered that there would be "[m]ost likely just two," and described a "potential third" as follows: "it would just be a Medicare expert, which isn't really an expert. They're just going to come and talk that these patients were Medicare beneficiaries. So to the extent that those are experts when we designate them, they're not really – they're just really fact witnesses. But in an abundance of [caution], we usually typically designate them, but we can – they're not going to give an opinion." Tr. of June 8, 2026 Scheduling Conference at 9.

The defense raised an objection promptly. On July 10, 2026, undersigned counsel wrote that "we object to the government's failure to designate Shauna Schwarm as an expert, and we will seek to limit or exclude her testimony on that basis," because "[c]learly, the testimony you seek to elicit from her comes within the scope of Rule 702." *See* July 10, 2026 email, ECF No. 103-2 at 2. The government did not cure the deficiency. It produced no statement of opinions, no bases and reasons, and no list of prior testimony, and it stood on its position that Ms. Schwarm is a "fact" witness.

**C. The purpose for which the government needs Ms. Schwarm confirms that her testimony is expert opinion.**

The government does not need a Medicare witness to establish that these patients carried Medicare cards; that is provable by the enrollment records and custodians already on its exhibit and witness lists. ECF No. 90 at 3 (Exhibits 29, 34); ECF No. 125 at 1-3. What the government needs Ms. Schwarm for is materiality.

At the June 1 hearing, counsel explained the theory: the false statement "caused that patient to undergo treatments at the hospital that – for just to stay on the waitlist. It wasn't for their health. It wasn't for them to get better. It was just to stay on the waitlist." June 1, 2026 Hearing Tr. at 34. The superseding indictment pleads the same theory for each patient, alleging that each "received health care benefits, items, and services as if he were eligible to receive donor organ offers." SSI ¶¶ 12, 14, 16, 18 (emphasis added). To prove that theory – that the criteria adjustments were material to what Medicare paid, and that Memorial Hermann was paid as though these patients remained active – the government must establish, through specialized knowledge of the Medicare program, what Medicare pays for an active versus an inactive waitlist patient and whether the adjustments made any material difference. Consistent with that purpose, the notice says Ms. Schwarm will address the certification that "the services purportedly provided, as set

forth in the claims, [were] medically necessary." ECF No. 89 at 11. That is a Rule 702 opinion bearing on materiality, not fact testimony that a patient was enrolled in Medicare.

**D. Having designated Ms. Schwarm and withheld the required disclosures, the government cannot offer her opinions.**

Rule 16(a)(1)(G) required the government to disclose "a complete statement of all opinions" it will elicit from Ms. Schwarm under Rules 702, 703, or 705, "the bases and reasons" for those opinions and a list of her expert testimony from the preceding four years, and to do so in writing before trial. The government provided none of it.

One feature of the notice warrants the Court's attention. The government reserved the right to call "Shauna Schwarm, ***or another witness***," to give this testimony. ECF No. 89 at 7 (emphasis added). A designation that does not identify the witness is not a designation at all, and it cannot support the substitution of an entirely undisclosed Medicare witness on the eve of trial.

Because Ms. Schwarm's anticipated testimony is expert testimony, and because the government has not made the disclosures Rule 16 requires, her testimony should be excluded. At a minimum, the Court should hold the government to its own election: if Ms. Schwarm testifies at all, she may not offer any opinion resting on specialized knowledge of the Medicare program – which, as the notice described it, is the entirety of her anticipated testimony.

## VI.
## Conclusion

For the foregoing reasons, Dr. Bynon respectfully requests that the Court (1) preclude any Memorial Hermann or UT Health physician, including any member of the Medical Review Board, and the government's case agent, from offering an opinion that any patient was medically suitable or eligible for transplantation on the date that the Medical Review Board approved transplantation or the date Dr. Bynon adjusted that patient's donor-acceptance criteria, or that the patient's

condition had not changed between the board's approval and that later date, such opinions being undisclosed expert testimony offered after the expert-designation deadline; and (2) exclude any expert testimony from Shauna Schwarm, or in the alternative preclude her from offering any opinion resting on specialized knowledge of the Medicare program.

Respectfully submitted,

/s/ *Samy Khalil*
Samy Khalil
Texas Bar No. 24038997
John Kinchen
Texas Bar No. 00791027
**KHALIL KINCHEN LLP**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
samy@khalilkinchen.com
john@khalilkinchen.com

Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, Maryland 20878
202.975.9105
brentevannewton@gmail.com

*Attorneys for Dr. Steve Bynon*

## CERTIFICATE OF CONFERENCE

On August 13, 2026, I conferred with counsel for the government concerning the relief requested in this motion. Counsel for the government responded that the government is "opposed to" the request to preclude opinion testimony from Memorial Hermann physicians regarding patient suitability, and that the government is "not using Schwarm." This motion is therefore opposed in part.

/s/ *Samy Khalil*
Samy Khalil

## CERTIFICATE OF SERVICE

On August 14, 2026, I served a copy of this pleading via ECF to counsel for the government.

/s/ *Samy Khalil*
Samy Khalil