**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIM. NO. H-26-023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**UNITED STATES' EXPLANATION OF WILLFULLNESS AND RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION FOR A BILL OF PARTICULARS**

The Court ordered the United States to explain "whether the 'willfulness' allegations in the indictment are based solely on Dr. Bynon's alleged non-compliance with § 482.94 and, if not, [] identify the specific statute or regulation that the government contends supports that element" by no later than August 17, 2026. (Docket No. 126 at p. 4.) The United States respectfully submits the following explanation in accordance with Court's order.

Defendant John Stevenson Bynon, Jr. ("Bynon") moves for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). (Docket No. 120.) For the reasons set forth below, the defendant's motion should be denied.

## I. Background

On January 14, 2026, a grand jury returned an indictment charging Bynon with five counts of making a false statement relating to health care matters in violation of 18 U.S.C. § 1035. (Docket No. 1.) Bynon subsequently entered a plea of not guilty. (Docket No. 8.) Trial is set to commence on August 24, 2026. (Docket No. 73.)

Bynon first filed a motion for a bill of particulars on July 12, 2026. (Docket No. 93.) The United States responded. (Docket No. 105.) On August 7, 2026, Bynon filed a second motion for a bill of particulars. (Docket No. 120.)

The Court granted the first motion for a bill of particulars on August 11, 2026, holding that

"Dr. Bynon needs to know which regulations he allegedly violated so that he can prepare legal – not just factual – defenses to the government's allegations." (Docket No. 126 at p. 3.) The "present record provides inadequate information as to the basis for the allegations that Dr. Bynon acted with criminal intent." *Id.* at p. 2. This record consists of the indictment, superseding indictment, pretrial pleadings, legal argument, and exhibits attached to various motions.

The Court ordered the United States to submit a filing by August 17, 2026, explaining "whether the willfulness' allegations in the indictment are based solely on Dr. Bynon's alleged non-compliance with § 482.94 and, if not, identify the specific statute or regulation that the government contends supports that element." *Id.* at p. 4. A grand jury returned a superseding indictment the next day, setting forth the following allegations:

> BYNON knew the patients (listed in Counts 1-5 of this Indictment) had been approved/listed for liver transplantation. BYNON intentionally took deliberate action to change the patient's donor-acceptance. The changes, made unilaterally by BYNON, occurred after the transplant committee/board approval for a liver transplant for patients listed in Counts 1-5 of this Indictment. The new parameters intentionally placed by BYNON were so restrictive that suitable donors would be screened out and the patients stopped receiving offers. There was no documented change in the patient's condition supporting the newly restrictive criteria. The change was not disclosed to the patients, transplant committee, or other people who reasonably would have expected to know about it.
>
> BYNON's actions were not undertaken pursuant to, or in good-faith compliance with, any identified transplant policy from Memorial Hermann, University of Texas Health Science Center, Health Resources and Services Administration, Center for Medical Services, Organ Procurement and Transplantation Network, or stated in 42 Code of Federal Regulations Part 482 Subpart E – Requirements for Specialty Hospitals. BYNON's actions did not follow institutional custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician. To the extent the governing policies permitted clinical judgment or professional leeway, that discretion did not authorize a physician to use donor-acceptance criteria as an undisclosed means of nullifying a transplant decision already reached through the established approval/review board process. The absence of documented clinical justification, the departure from established procedures, the failure to obtain or seek appropriate review, the lack of transparency to fellow physicians, staff and patients, the secretive nature of Bynon's material alternations of eliminating transplant offers

> are circumstances supporting a reasonable inference that the false statement, related to patients in Counts 1-5 of this Indictment, were created intentionally and deliberately and materially influenced the opportunity for a liver transplant.

(Docket No. 129 at pp. 8-9.) The superseding indictment constitutes the explanation that this Court ordered the United States to provide on this date. It refers to the regulations and policies that support the willfulness element.

In his second motion for a bill of particulars, Bynon requests that the Court compel the United States to reveal the "legal and factual bases supporting [its] theory of how Dr. Bynon made 'false,' 'fraudulent,' or 'fictitious' statements or entries in the UNet system." (Docket No. 120 at p. 11.)

## II. Legal Standard

Federal Rule of Criminal Procedure 7(f) ("Rule 7(f)") provides that a defendant may "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the charges against him, to minimize surprise at trial, and to enable the defendant to plead double jeopardy in the event of a subsequent prosecution for the same offense. *United States v. Diecidue*, 603 F.2d 535, 546-47 (5th Cir. 1979); *United States v. Martinez*, 599 F. Supp. 2d 784, 808 (W.D. Tex. 2009) (citation omitted). "A defendant possesses no right to a bill of particulars[.]" *United States v. Burgin*, 621 F.2d 1352, 1358 (5th Cir. 1980). The decision to grant or deny a motion for a bill of particulars falls within the sound discretion of the district court. *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977). The district court abuses its discretion in denying a motion for a bill of particulars only when the denial results in actual surprise at trial and prejudice to a defendant's substantial rights. *See United States v. Hughes*, 817 F.2d 268, 272 (5th Cir. 1987).

### A. The Willfulness Element

To sustain a conviction on the Section 1035 counts, the United States must prove that "(1) the defendant made a materially false, fictitious, or fraudulent statement or misrepresentation; (2) in connection with the delivery of [or payment for] health care benefits; and (3) [he] did so knowingly and willfully." *United States v. Hamilton*, 37 F.4th 246, 260 (5th Cir. 2022) (citing *United States v. Dailey*, 868 F.3d 322, 330 (5th Cir. 2017)). "Willfully" means "that the act was committed voluntarily and purposefully, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." *See* Fifth Cir. Pattern Jury Instr. 1.43 ("Willfully" – To Act).

In *Bryan v. United States*, the Supreme Court considered whether the term "willfully" required the United States to prove "knowledge of the law." 524 U.S. 184, 194 (1998). The answer to this inquiry is contingent on the offense charged in the indictment. For instance, "in certain cases involving willful violation of the tax law, [the Supreme Court] concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Id*. (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)); *see Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (holding that "the jury had to find [that the defendant] knew the structuring in which he engaged was unlawful"). The *Bryan* Court distinguished *Cheek* and *Ratzlaf* from a case charging a firearm offense (18 U.S.C. § 924) because the former "involved highly technical statues that threatened to ensnare individuals engaged in apparently innocent conduct." *Id*. at 195. Accordingly, the "willfulness requirement of [the firearm statute did] not carve out an exception to the traditional rule that ignorance of the law is no excuse: knowledge that the conduct is unlawful is all that is required." *Id*. at 196*; see United States v. George*, 386 F.3d 383, 393 (2d Cir. 2004) ("[The] Second Circuit has held that the term 'willfully' in criminal

statutes typically does not require the government to prove the defendant's specific intent to violate the particular criminal statute in question.").

The Fifth Circuit subsequently adopted the rationale set forth in *Bryan*, identifying "three levels" of willfulness in criminal statutes. *United States v. Kay*, 513 F.3d 432, 447 (5th Cir. 2007). The first tier is the "most basic:" The defendant "need not have known of the specific terms of the statute or even the existence of the statute." *Id*. The second "intermediate" tier of willfulness requires the "defendant to have known that his actions were in some way unlawful." *Id*. Namely, the defendant "need not have known of the specific statute, but rather that he must have acted with the knowledge that he was doing a 'bad' act under the general rules of law." *Id*. The third tier is the "strictest," requiring proof that the defendant "knew the terms of the statute and that he was violating the statute." *Id*. at 448. This tier is reserved for complex criminal statutes, such as federal tax law. *Id*.

Because Section 1035 is not a complex or technical statute, the intermediate tier of willfulness is applicable. *See United States v. Starnes*, 583 F.3d 196, 210 (3rd Cir. 2009) ("[When] 'willfully' is used in a criminal statute, and particularly where the term is used in conjunction with 'knowingly,' as it is in § 1001, it usually requires the government to prove that the defendant acted 'not merely voluntarily, but with a bad purpose,' that is, with knowledge that his conduct was, *in some general sense*, 'unlawful.'") (emphasis added); *George*, 386 F3d. at 389 (holding that "a conviction under § 1542 only requires that a defendant provide in a passport application information he or she knows to be false and does not mandate that the defendant act with a specific purpose to make false statements or to violate the law, either generally or § 1542 specifically"); *United States v. Perry*, Case No. 13-156, 2014 U.S. Dist. LEXIS 175643, at *6-8 (E.D. Va. Dec. 19, 2014) (rejecting the defendant's argument that Section 1035 is subject to the "elevated *mens*

*rea*" identified by the *Cheek* and *Ratzla*f courts). Thus, the United States need not prove that Bynon knew the specific statute, regulation, or policy that he violated. Proof that "his actions were in some way unlawful" is sufficient to sustain a conviction for a violation of Section 1035. *Kay*, 513 F.3d at 447; *see, e.g., United States v. Delgado*, 668 F.3d 219, 225-26 (5th Cir. 2012) (holding that "the jury could readily infer [the defendant's] criminal intent to commit healthcare fraud and to make false statements relating to health care matters" based on the fact that this defendant was "a medical billing expert with thirty years experience who received continual updates from Medicaid and Medicare").

Dr. Bynon served as the Director of Abdominal Organ Transplantation and Surgical Director for Liver Transplantation of Memorial Herman Health System at the Texas Medical Center in Houston, Texas from 2011 to 2024. He served on the Organ Procurement and Transplantation Network (OPTN) National Liver Review Board from 2018-22, and as a peer visit team member, assessing other transplant programs for compliance with OPTN standards and policies.

As part of Dr. Bynon's surgical role, he was routinely required to complete a Medicare Enrollment Certification through the CMS. As a result, Dr. Bynon was aware of 18 U.S.C.§ 1035's prohibition on falsifying (material) information in connection to the delivery of health care benefits through his Medicare Enrollment (Re-) Certification. Subsection 5 of Section 14, entitled "Penalties for Falsifying Information," expressly informed Dr. Bynon not only that the law forbids a false statement or entry with the delivery of health care benefits, but also the *specific statute* the conduct violates.

## SECTION 14: PENALTIES FOR FALSIFYING INFORMATION

**This section explains the penalties for deliberately furnishing false information in this application to gain or maintain enrollment in the Medicare program.**

1. 1.18 U.S.C. § 1001 authorizes criminal penalties against an individual who, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious, or fraudulent statements or representations, or makes any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry. Individual offenders are subject to fines of up to $250,000 and imprisonment for up to five years. Offenders that are organizations are subject to fines of up to $500,000 (18 U.S.C. § 3571). Section 3571(d) also authorizes fines of up to twice the gross gain derived by the offender if it is greater than the amount specifically authorized by the sentencing statute.

2. Section 1128B(a)(1) of the Social Security Act authorizes criminal penalties against any individual who, "knowingly and willfully," makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program. The offender is subject to fines of up to $25,000 and/or imprisonment for up to five years.

3. The Civil False Claims Act, 31 U.S.C. § 3729, imposes civil liability, in part, on any person who:
   a) knowingly presents, or causes to be presented, to an officer or any employee of the United States Government a false or fraudulent claim for payment or approval;
   b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or
   c) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

   The Act imposes a civil penalty of $5,000 to $10,000 per violation, plus three times the amount of damages sustained by the Government

4. Section 1128A(a)(1) of the Social Security Act imposes civil liability, in part, on any person (including an organization, agency or other entity) that knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency…a claim…that the Secretary determines is for a medical or other item or service that the person knows or should know:
   a) was not provided as claimed; and/or
   b) the claim is false or fraudulent.

   This provision authorizes a civil monetary penalty of up to $10,000 for each item or service, an assessment of up to three times the amount claimed, and exclusion from participation in the Medicare program and State health care programs.

5. 18 U.S.C. 1035 authorizes criminal penalties against individuals in any matter involving a health care benefit program who knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact; or makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items or services. The individual shall be fined or imprisoned up to 5 years or both.

**SECTION 14: PENALTIES FOR FALSIFYING INFORMATION** *(Continued)*

6. 18 U.S.C. 1347 authorizes criminal penalties against individuals who knowing and willfully execute, or attempt, to executive a scheme or artifice to defraud any health care benefit program, or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the control of any, health care benefit program in connection with the delivery of or payment for health care benefits, items, or services. Individuals shall be fined or imprisoned up to 10 years or both. If the violation results in serious bodily injury, an individual will be fined or imprisoned up to 20 years, or both. If the violation results in death, the individual shall be fined or imprisoned for any term of years or for life, or both.
7. The government may assert common law claims such as "common law fraud," "money paid by mistake," and "unjust enrichment."

   Remedies include compensatory and punitive damages, restitution, and recovery of the amount of the unjust profit.

**SECTION 15: CERTIFICATION STATEMENT** *(Continued)*

| First Name | Middle Initial | Last Name | M.D., D.O., etc. |
|---|---|---|---|
| JOHN | S. | BYNON | MD |

| Practitioner Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | Date Signed *(mm/dd/yyyy)* |
|---|---|
| | 06/30/2016 |

**All signatures must be original and signed in ink (blue ink preferred). Applications with signatures deemed not original will not be processed. Stamped, faxed or copied signatures will not be accepted.**

Government's (Proposed) Exhibit 25A, John S. Bynon, MD Medicare Enrollment Recertification Application 6.30.2016. Dr. Bynon was further on notice regarding the requirement for truthful and matching information to a patient's medical record through 42 Code of Federal Regulations Part 482 Subpart E – Requirements for Specialty Hospitals, and the UNOS Terms of Use[1].

[1] The Court inquired about whether UNOS had a Terms of Use at the hearing held on June 1, 2026. (Docket No. 58.) A user of the UNOS system is required to agree to the Terms of Use on an annual basis.

(c) *Standard: Patient records.* Transplant programs must maintain up-to-date and accurate patient management records for each patient who receives an evaluation for placement on a program's waiting list and who is admitted for organ transplantation.

(1) For each patient who receives an evaluation for placement on a program's waiting list, the program must document in the patient's record that the patient (and in the case of a kidney patient, the patient's usual dialysis facility) has been informed of his or her transplant status, including notification of:

(i) The patient's placement on the program's waiting list;

(ii) The program's decision not to place the patient on its waiting list; or

(iii) The program's inability to make a determination regarding the patient's placement on its waiting list because further clinical testing or documentation is needed.

**42 CFR 482.94(c)(1)(iii) (enhanced display)** **page 11 of 16**

**42 CFR Part 482 Subpart E (up to date as of 5/26/2026)**
**Requirements for Specialty Hospitals** **42 CFR 482.94(c)(2)**

(2) If a patient on the waiting list is removed from the waiting list for any reason other than death or transplantation, the transplant program must document in the patient's record that the patient (and in the case of a kidney patient, the patient's usual dialysis facility) was notified no later than 10 days after the date the patient was removed from the waiting list.

Government's (Proposed) Exhibit 1, 42 CFR 482 Subpart E- Code of Federal Regulations.

8. **Data Accuracy**. You represent and warrant that the data entered by you or your authorized personnel in UNOS Systems are accurate, timely, and complete to the best of your knowledge, information and belief; and that these data are based upon information contained in corresponding medical records and other source documents, or where appropriate, are based upon clinical observation

Government's (Proposed) Exhibit 23, UNOS Term of Use Modified September 12, 2018; *see also* Government's (Proposed) Exhibit 24, UNOS Term of Use Modified December 7, 2023. As the Court has previously acknowledged, "Dr. Bynon does not dispute that he adjusted donor acceptance criteria using UNET for the express purpose of having a donated liver not match the criteria for each of the five patients at certain points during his treatment of the patients…[and] that his patient's donor criteria were literally false," demonstrating his intent to make a false statement. Memorandum and Opinion (Docket No. 43), 7 (internal quotations and reference

citations omitted). As analyzed by the *Kay* court, Dr. Bynon knew he was making a false statement when he inputted false organ criteria for the patients, *and* he was (generally) aware that it was unlawful to do such in the delivery of health care benefits.

## III. Discussion

Bynon moves for a bill of particulars beyond the already provided information for two reasons. First, he seeks to ascertain the United States' theory of the case. (Docket No. 120 at p. 11.) Second, Bynon purports that this theory (*i.e.* the very "theory of falsity" that he claims to not know) is "unsupported by the evidence the government represented it would offer." *Id*. These reasons are an abuse of a bill of particulars and the pretrial process.

Bynon is not entitled to know the United States' theory of the case in advance of trial. *See United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982) ("[A] bill of particulars cannot be required to compel revelation of the full theory of the case or all the evidentiary facts"); *Burgin*, 621 F.2d at 1359 (holding that a bill of particulars "is not designed to compel the government to [give a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial"); *United States v. Davis*, Case No. 20-575, 2021 U.S. Dist. LEXIS 3171, at *4 (N.D. Tex. Jan. 7, 2021) (noting that the defendant's "requests either seek the government's evidence or its legal theories. But this is not what a bill of particulars is for. The (old) Fifth Circuit has made clear that 'the purpose of the bill of particulars is not to provide detailed disclosure before trial of the Government's evidence'") (quoting *United States v. Sheriff*, 546 F.2d 604, 606 (5th Cir. 1977)); *United States v. Vaughan*, Case No. 22-162, 2024 U.S. Dist. LEXIS 162551, at *3-4 (E.D. Tex. Sept. 10, 2024) ("A defendant is not entitled to a bill of particulars to discover the theory of the government's case. Nor may a bill of particulars be 'used for the purpose of obtaining a detailed disclosure of the Government's evidence in advance of trial'") (quoting *Downing v. United States*,

348 F.2d 594, 599 (5th Cir. 1965)); *United States v. Shults*, Case No. 14-298, 2018 U.S. Dist. 181742, at *7 (N.D. Tex. Sept. 18, 2018) ("The Court finds that the request [for a] bill of particulars should be denied. Based on the information requested, Defendants seek impermissibly to use Rule 7(f) to obtain generalized discovery and the Government's theory of the case."); *United States v. O'Keefe,* Case No. 95-106, 1995 U.S. Dist. LEXIS 17563, at *4 (E.D. La. Nov. 16, 1995) ("Finally, defendant is not, by means of a bill of particulars, entitled to obtain the theory of the government's case.") (citation omitted); *United States v. Maragh*, Case No. 20-218, 2026 U.S. Dist. LEXIS 161616, at *4-5 (W.D. Pa. July 21, 2026) ("A bill of particulars, unlike discovery, is not intended to provide a defendant with the fruits of the Government's investigation, but rather to give the defendant only that minimum amount of information necessary to allow him to conduct his own investigation.") (citing *United States v. Smith*, 776 F.2d 1104, 1111 (3rd Cir. 1985)); *United States v. Addonizio*, 451 F.2d 49, 64 (3rd Cir. 1971) (noting that the United States is not required at the pre-trial stage to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants"); *United States v. De La Cruz*, 818 F. Supp. 3d 472 (E.D. N.Y. 2026) (denying the defendant's motion for a bill of particulars because ordering the United States to "identify the reasons why the government characterizes Mr. Ortiz Ribera's messages as being in furtherance of the alleged conspiracy, the government would be forced to provide a preview of its theory of the case against [the defendant]"). Compelling the United States to explain "how it will prove" its case-in-chief before trial would misconstrue Rule 7(f) and deviate from binding precedent.

With that being said, the United States relays to the Court that its theory of the case is the following: Dr. Bynon misrepresented the decision of the MHHS Multi-Disciplinary Review Board (MRB) when he falsely stated on the UNET organ donor- sharing system, that his patients needed

organs from donors of unrealistic age and weight criteria. Docket No 62; *See also United States v. Bynon*, Case No. 25-023, 2026 U.S. dist. LEXIS 125562, at *1 (S. D. Tex. June 3m, 2026)). These statements were made in connection with healthcare benefits, or lack thereof. The superseding indictment adequately apprises Bynon of the charges against him and protects against prospective double jeopardy violations. The United States has produced voluminous discovery, including transplant policies and regulations. A bill of particulars is not an investigative vehicle. *See United States v. Churchill*, Case No. 20-252, 2012 U.S. Dist. LEXIS 43211, at *7 (E.D. Tex. Mar. 8, 2021) (holding that "a bill of particulars is not a discovery device" and that the "Government is under no obligation to organize and identify relevant information already produced to [the defendant]"). The United States need not preview its case-in-chief to comply with the pleading requirements set forth in Federal Rule of Criminal Procedure 7. Consequently, Bynon's second motion for a bill of particulars lacks merit and should be denied.

## IV. Conclusion

For the reasons set forth above, the United States requests that the Court deny the Bynon's second motion for a bill of particulars. (Docket No. 120.)


Respectfully Submitted,
AARON F. REITZ
United States Attorney

Southern District of Texas
By: /s/ Amanda Alum
Amanda Alum
Suzanne Elmilady
Sherin Daniel
Anthony Franklin
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone (713) 567-9000

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been delivered on counsel of record via ECF upon filing.

*/s/ Amanda Alum*
Amanda Alum
Assistant United States Attorney